**Howard S. LONG, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Internal Revenue Service, and Colorado Department of Revenue, Defendants–Appellees.**

**No. 91–1248.**

United States Court of Appeals, Tenth Circuit.

Aug. 17, 1992.

Charles F. Murray, Denver, Colo., for plaintiff-appellant.

Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Gayle P. Miller and Randolph L. Hutter, Attorneys, Tax Div., Dept. of Justice, Washington, D.C.; Michael J. Norton, U.S. Atty., of counsel), for defendants-appellees.

Thomas D. Fears, Asst. Atty. Gen., State of Colo., Denver, Colo., Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., and Larry A. Williams, First Asst. Atty. Gen., filed an answer brief, for defendant-appellee Colorado Dept. of Revenue.

Before ANDERSON, EBEL, Circuit Judges and VAN SICKLE,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This appeal requires us to determine whether the Internal Revenue Service (IRS) unlawfully disclosed tax information concerning Howard Long, in violation of 26 U.S.C. § 6103, by sending liens and levies to various financial institutions, county re-

---

* Honorable Bruce M. Van Sickle, Senior Judge, United States District Court for the District of North Dakota, sitting by designation.

corders, and the Social Security Administration in an effort to collect income taxes pursuant to a jeopardy assessment against Long. We must also determine whether the IRS unlawfully disclosed tax information concerning Long to the Colorado Department of Revenue (CDR), and, *inter alia*, whether the district court properly dismissed the CDR for lack of subject matter jurisdiction.

We hold that no unlawful disclosures occurred; that the CDR was properly dismissed as a party; and that the other issues raised by Long are meritless. Accordingly, we affirm the judgment of the district court dismissing the CDR, and the summary judgment of the district court dismissing Long's action against the United States and the IRS (collectively, the federal appellees) for damages from wrongful disclosure pursuant to 26 U.S.C. § 7431. Our decision is based in part on grounds other than those relied upon by the district court, but supported by the record. *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988).

## BACKGROUND

On July 29, 1985, the IRS imposed a $138,961 jeopardy assessment against Long pursuant to 26 U.S.C. § 6861(a)[1] to collect unpaid taxes, interest, and penalties for the years 1978–1984. In an effort to collect the sums assessed, the IRS then caused federal tax lien notices to be recorded in various counties, and issued a series of notices of levy to the General Electric Pension Trust regarding Long's account, and to the Social Security Administration. In addition, between July 23, 1985, and December 31, 1987, the IRS issued notices of levy to the Bank of Applewood in Wheatridge, Colorado and to several other banks. The IRS also disclosed information to the CDR regarding Long's federal tax liabilities.

In September 1985, after Long failed to avail himself of his right to seek a review of the jeopardy assessment by administrative proceedings or suit in federal district court, the IRS issued to Long a statutory notice of deficiency in the amount of the jeopardy assessment. On December 19, 1985, Long filed a petition in the United States Tax Court challenging the proposed deficiency. After Long failed to comply with orders of the Tax Court, judgment was entered against him in the full amount of the deficiency and his petition was dismissed. Long appealed that decision to this court, then voluntarily dismissed the appeal, and the Tax Court judgment became final.

Long filed this action in the district court in 1989, asserting multiple causes of action against the federal defendants and the CDR. All were subsequently dismissed. The only cause of action pursued by Long in this appeal is his claim for damages against all defendants, pursuant to 26 U.S.C. § 7431,[2] for unlawfully disclosing information about his taxes in violation of 26 U.S.C. § 6103.[3]

1. If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.
 26 U.S.C. § 6861(a).

2. If an officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of § 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.
 26 U.S.C. § 7431(a)(1).

3. § 6103. Confidentiality and disclosure of returns and return information
 (a) General rule
 Returns and return information shall be confidential, and except as authorized by this title—
 (1) no officer or employee of the United States,
 (2) no officer or employee of any State, any local child support enforcement agency, or any local agency administering a program listed in subsection (1)(7)(D) who has or had access to returns or return information under this section, and
 (3) no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

Long's unauthorized disclosure claims fall into three categories. First, he contends that the liens and levies were unauthorized disclosures because the jeopardy assessment was defective. Next, he asserts that the IRS improperly divulged his tax information to the CDR because the requirements of § 6103(d) permitting such an exchange were not followed. Finally, he argues that the levies issued to the Bank of Applewood were unnecessary, and therefore unauthorized, because Long had no account or money at the bank, and the bank notified the IRS of that fact. Br. of Appellant at 2.

The district court dismissed the CDR for lack of subject matter jurisdiction. After discovery, the court granted the federal appellee's motion for summary judgment on the unauthorized disclosure claims. It ruled: that the provisions of § 6103(d) were satisfied, permitting the disclosures to the CDR; that no challenges to the liens and levies could be entertained because the Tax Court proceedings were *res judicata;* and that the levies issued to the Bank of Applewood were also authorized under § 6103. Finally, the district court denied Long's motion for leave to amend his complaint.

Long contests those rulings and reasserts his arguments on appeal. We review de novo the district court's dismissal of the CDR for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *Redmon, ex rel. Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991). We review the district court's decision to grant summary judgment de novo. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R.Civ.P. 56(c).

## DISCUSSION

### I. DISMISSAL OF THE CDR FOR LACK OF JURISDICTION

■ Long sued the CDR pursuant to 26 U.S.C. § 7431(a)(2) for the receipt and alleged unlawful disclosure of information about Long which the CDR obtained from the IRS. Section 7431(a)(2) provides:

(2) Disclosure by a person who is not an employee of United States.—If any *person* who is not an officer or employee of the United States knowingly, or by reason of negligence, *discloses* any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against *such person* in a district court of the United States.

26 U.S.C. § 7431(a)(2) (emphasis added).

The district court held that the Anti–Injunction Act, 28 U.S.C. § 1341, divested the court of jurisdiction, and dismissed the CDR as a party. Long argues that the Anti–Injunction Act does not apply because there is no "plain, speedy and efficient remedy" for wrongful disclosure in the state court. It is unnecessary for us to resolve that contention since § 7431(a)(2) fails to confer any right of action against a state agency. First, §§ 7431(a)(2) and 6103(a) punish the disclosure, not the receipt or use, of return or return information under § 6103. Second, the statutes impose liability on "persons," "officers," or "employees" who disclose information "in connection with [their] service as such an officer or employee." Those terms do not contemplate liability against a state agency.[4] Accordingly, the dismissal of Long's

---

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.
26 U.S.C. § 6103(a).
"Return information" is a term of art that includes, among other things, the taxpayer's

identity, the amount of his income, the amount of any deficiencies, whether the taxpayer's return was, will be, or is being examined or subject to other investigation, and any information the IRS obtains in respect to a return. *See* 26 U.S.C. § 6103(b)(2)(A).

**4.** Administrative law distinguishes between "persons" and "agencies." *See, e.g.,* 5 U.S.C. §§ 551, 552a, 701. Similarly, 26 U.S.C. § 7701

suit against the CDR, a state agency, was proper.[5]

## II. ALLEGED UNAUTHORIZED DISCLOSURES TO THE CDR

On or about August 25, 1985, W. E. Zimmerman, an IRS officer, conveyed tax information about Long to the CDR. Additionally, in January, 1989, the IRS provided the CDR with three Forms 5278 containing tax information regarding Long. Through discovery, other IRS documents relating to Long were found to be in the possession of the CDR. Long contends that all of these documents constituted actionable unauthorized disclosures.

Section 6103(d)(1) permits disclosures by the IRS to state agencies under certain conditions. That section provides, in pertinent part:

> Returns and return information ... shall be open to inspection by, or disclosure to, any State agency ... which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws.... Such inspection shall be permitted, or such disclosure made, *only upon written request* by the head of such agency, body, or commission, and only to the representatives of such agency, body, or commission designated in *such written request* as the individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission.

26 U.S.C. § 6103(d)(1) (emphasis added).

In order to satisfy the "written request" and other provisions of § 6103(d), the IRS has entered into Agreements on Coordination of Tax Administration ("Agreement on

Coordination") with each of the 50 states and the District of Columbia. The Agreement on Coordination between the CDR and the IRS is standard in form, nineteen pages in length, App. of Appellant, Vol. II at 334–353, and provides, in part, as follows:

> 3.2 This agreement constitutes the requisite authorization pursuant to § 6103(d)(1) of the Code for IRS to disclose to, and permit inspection by, an agency representative of Federal returns and Federal return information relating to taxes imposed by Chapter(s) 1, 2, 6, 11, 12, 24, 31, 32, and 36 Subchapter D of the Code.

*Id.* at 338.

Additionally, the Agreement on Coordination, consistent with other such agreements between the states and the IRS, provides that it "may be supplemented by an Implementing Agreement, prescribing the nature, quantity and mechanics for the continuous exchange of tax information...." *Id.* at 334. There was such an Implementation Agreement between the CDR and the IRS. *Id.* at 348–362. Subparagraphs E. and F. of that agreement are as follows:

E. *Tax Year Terminations and Jeopardy Assessments*

1. The Denver district and the Agency agree to exchange information involving the seizure of currency and other disposable assets by other Federal, state, and local law enforcement agencies.

2. The Denver District will provide the Agency copies of examination workpapers and reports for tax year terminations and jeopardy assessments made pursuant to Sections 6851 and 6861 of the Internal Revenue Code.

---

defines "person:" "to mean and include an individual, a trust, estate, partnership, association, company, or corporation." 26 U.S.C. § 7701(a)(1).

**5.** The CDR has filed a motion to dismiss Long's appeal as untimely. It claims that the Order of · Dec. 4, 1989 dismissing it as a party was a final order appealable at that time under 28 U.S.C. § 1291. Long's appeal as to all parties was filed July 5, 1991, following the May 9, 1991, judg-

ment of the district court dismissing the federal appellees. We deny the CDR's motion to dismiss Long's appeal. Finality does not attach to an order that dismisses some but not all defendants in an action. *See Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369, 1370 n. 2 (10th Cir.1979); 15A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3914.7, at 549–51.

The shared information will be limited to individual income tax matters involving—(illegible)—in the custody of. other Federal, state, and local agencies.

3. The Agency's Special Agent listed in attached B will be contacted by telephone when termination assessment or other agency seizure information is available. The Special Agent personally will pick up the information or will dispatch a messenger for pickup. The information will be transmitted in a double-sealed envelope to be opened by the Special Agent only. Form 3210, Document Transmittal, will be used to acknowledge receipt of the information. The yellow copy will be returned to the Denver District by the Special Agent after verification of the shipment.

4. The Agency will reciprocate by furnishing the Denver District like information. The District Disclosure Officer listed in attachment A will be contacted by telephone and a Special Agent from the Criminal Investigation Division will pick up the information.

5. There will be no charge for information furnished pursuant to the program.

F. *Disclosure of Possible Violations of State Administration Statutes*

1. The Agency will be contacted when the Denver District has a Federal return and/or return information which will not be transmitted to the Agency under other provisions of this agreement, but may be evidence of an intentional or inadvertent understatement or violation of any State tax described in Section 3 of the agreement on Coordination of Tax Administration.

2. The District Disclosure Officer shall, if the understatement of tax potentially exceeds any amount or if the understatement or violation is potentially a criminal tax violation, contact the Agency's Deputy Director listed in attachment B, and describe the return and/or return information (without disclosing identifying information) in sufficient detail to ascer-

tain the Agency's need and potential use of the return or return information.

3. If, in the judgment of the District Disclosure Officer, the Agency has a need and use of the return and/or return information, he/she shall then transmit the return and/or return information to the Agency. The information will be transmitted by double-sealed mailing to the Deputy Director.

*Id.* at 354–355.

Long argues that the Agreement on Coordination and the Implementation Agreement do not constitute the written request for information required by § 6103(d), since all such requests, according to Long, must be individualized. Alternatively, he argues that if they do satisfy the written request requirement of the statute, the terms of the Implementation Agreement were not followed. Br. of Appellant at 18. We disagree. The two agreements contain substantial safeguards, consistent with the purpose of the statute, while permitting the affected tax agencies to function effectively.

■ We hold that the Agreement on Coordination, together with the Implementation Agreement referred to above, satisfy the written request requirement of § 6103(d). *See Smith v. United States,* 964 F.2d 630 (7th Cir.1992). We also hold that the disclosures by the IRS to the CDR in this case were in accordance with the Implementation Agreement. In this regard, we note that there is some confusion in the briefs of the parties as to which of the various provisions of the Implementation Agreement applied in this case. Long concentrates on sections IV(A) and V of the agreement, as well as section IV(F). Br. of Appellant at 20–21, while the federal appellees rest their argument on the provisions of section IV(F). Br. of Appellees at 44–47. In the latter regard, the federal appellees reflect the August 8, 1985, communication from IRS officer Zimmerman to the CDR, stating, in part:

I have enclosed copies of two potential violations of C.R.S. Title 39 we discussed by telephone on August 8, 1985. The

information item is disclosed to you in accordance with section IV.F of the Implementation Agreement between your agency and the Internal Revenue Service.

App. of Appellant, Vol. II at 363, Ex. 10. A review of Zimmerman's deposition testimony, however, discloses that section IV(E) of the agreement also applied.

Zimmerman testified that all the disclosures he made to the CDR on behalf of the IRS were done pursuant to section IV(E) of the Implementation Agreement, dealing with jeopardy assessments. App. Vol. II at 589–90.[6] In his briefs, Long raises no objection to disclosures made pursuant to that section. In any event, our review of the record reveals sufficient compliance with the provisions of the Implementation Agreement. Accordingly, we conclude that the challenged disclosures made by the IRS to the CDR did not violate the provisions of § 6103 because they were specifically exempt under § 6103(d).

### III. ALLEGED WRONGFUL DISCLOSURE: LIENS AND LEVIES

It is undisputed that § 6103(k)(6) authorizes an IRS employee to disclose tax return information in the issuance of liens and levies. Thus, the general rule is that liens and levies do not constitute unauthorized disclosures under § 6103. Section 6103(k)(6), as is pertinent here, provides:

An internal revenue officers or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available ... with respect to the enforcement of any other provisions of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

26 U.S.C. § 6103(k)(6).

Also, Treasury Regulations provide, *inter alia,* specific authority to "apply the provisions of the Code relating to establishment of liens against ... assets [in which the taxpayer has an interest], or levy on, or seizure, or sale of, the assets to satisfy any such [tax] liability." Treas.Reg. § 301.-6103(k)(6)–(1)(b)(6)

To avoid this exception, Long offers a multiple-step argument. He contends that: in their motion for summary judgment, the federal appellees offered improper evidence of (1) the jeopardy assessment against him and (2) notice to him; thus, there being no cognizable proof of a jeopardy assessment, it must be assumed that the assessment was never made, or was procedurally defective; thus, the liens and levies were unauthorized; thus, the exception under § 6103(k)(6) cannot apply.[7] Br. of Appellant at 28, Reply Br. at 10.

---

**6.** Zimmerman engaged in the following colloquy with Long's counsel:

A: On a routine process case, *this one though fell outside of that once they made the jeopardy determination. Then I brought it into the implementation agreement under the section I referred to.*

Q: Under the jeopardy—the fact that there is a jeopardy assessment?

A: Yes.

Q: And because there was a jeopardy assessment, meaning somebody determined that he may try and dispose of assets so they wouldn't be available to the IRS?

A: Yes, sir, and the state may want to make that same determination to protect state tax administration revenues.

Q: Normally speaking, if there is not a jeopardy assessment, the process wouldn't

be—the information wouldn't be disclosed until the process was complete; is that ...

A: Yes, sir.

Q: *But because there was a jeopardy assessment, then the information is disclosed right away?*

A: Yes.

App. Vol. II at 589–90 (emphasis added).

**7.** The district court rejected this argument on *res judicata* grounds, holding that challenges to the procedural validity of the jeopardy assessment could have been made by Long in the Tax Court in connection with his petition for a redetermination of the deficiency asserted against him. However, we are not persuaded that Long's procedural defect arguments are barred by the doctrine of *res judicata,* although we agree with the conclusion that he has failed to make out a cause of action for wrongful disclo-

In support of their motion for summary judgment, the federal appellees submitted a certified copy of IRS Form 4340, "Certificate of Assessments and Payments,"[8] which, among other things, disclosed the fact, date, and amount of the jeopardy assessment against Long.

Long directs a multitude of arguments against the propriety of Form 4340, contending that the district court could not accept it as evidence of a procedurally proper jeopardy assessment against him. He asserts that Form 4340 is inadmissable hearsay; that it violates internal IRS directives that it be used only for non-automated data processing accounts; that it does not correspond to the exhibit included in the IRS manual; that the District Director of the Ogden Service Center was ineligible to certify the document since his authority relates only to documents under his custody and control and the custodian of the computer is the District Director of the national computer center in Martinsburg, West Virginia; that it is at best secondary evidence; it summarizes other records maintained by the IRS; and that the IRS claims the document represents something that it is not. Br. of Appellant at 33–40.

■ We reject all of these arguments. For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and Treas.Reg. 301.6203–1. *See James v. United States,* 970 F.2d 750, 755 (10th Cir.1992); *Hughes v. United States,* 953 F.2d 531, 539–40 (9th Cir.1992). *See also United States v. Chila,* 871 F.2d 1015, 1017–18 (11th Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501

(1989); *United States v. Nuttall,* 713 F.Supp. 132, 135 (D.Del.) (citing cases) (Form 4340 establishes government's prima facie case that assessment valid for purposes of summary judgment), *aff'd,* 893 F.2d 1332 (3rd Cir.1989); *United States v. Dixon,* 672 F.Supp. 503, 505–06 (M.D.Ala.1987) (Certificate of Assessments and Payments presumptive proof of valid assessment in absence of contrary evidence in motion for summary judgment), *aff'd,* 849 F.2d 1478 (11th Cir.1988); *United States v. Miller,* 318 F.2d 637, 639 (7th Cir.1963) (Certificate of Assessments and Payments demonstrates that assessment made in manner prescribed and proper for district court to consider copy in ruling on motion for summary judgment); *Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992) (Certificate of Assessments and Payments sufficient proof of adequacy and propriety of notices and assessments absent evidence to the contrary).[9]

Long acknowledges that he received notice of the assessment, but he contests the general validity of that notice. Appellant's Br. at 28. Specifically, he contends that he did not receive the exact forms listed in the IRS Manual. Reply Br. at 10. The IRS must "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." 26 U.S.C. § 6303(a). Not only does the IRS Manual not confer on the taxpayer a substantive right to receive a particular form, but also "[t]he form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a)." *Elias v. Connett,* 908 F.2d 521, 525 (9th Cir.1990). Addition-

---

sure with respect to the liens and levies issued by the IRS.

8. Form 4340 is a transcript that specifies that name of the taxpayer, the taxpayer's address, social security number, type and amount of tax involved, and the date of each assessment. The document is certified—in this case, by the director of the Ogden Service Center.

9. Long also argues that even if a presumption of correctness attaches to the Form 4340, that presumption should dissolve if the taxpayer objects

to its admission into evidence. Reply Br. at 22. However, the taxpayer has the burden of going forward with evidence and the burden of persuasion to overcome the presumption attaching to the Forms 4340. *Gentry v. United States,* 962 F.2d 555, 558 (6th Cir.1992); *Psaty v. United States,* 442 F.2d 1154, 1160 (3rd Cir.1971); *Higginbotham v. United States,* 556 F.2d 1173, 1175 (4th Cir.1977) (taxpayer has burden of showing erroneous assessment); *United States v. Nuttall,* 713 F.Supp. 132, 135 (D.Del.), *aff'd,* 893 F.2d 1332 (3rd Cir.1989).

ally, proper notice and demand can be established through a series of documents, and need not be conveyed by one, and only one communication with the taxpayer. *See Hughes,* 953 F.2d at 536. We are satisfied that Long received proper notice under the statute.

Because Long has failed to establish any genuine issue with respect to the regularity of the jeopardy assessment against him in 1985, his arguments that liens and levies issued pursuant to that assessment'were not permitted by § 6103(k)(6) fail. We hold that no unlawful disclosure occurred. Our disposition of this issue makes it unnecessary to address other arguments raised by the parties on the subject.

## IV. DISCLOSURES TO BANK OF APPLEWOOD

Long separately argues that monthly levies to the Bank of Applewood ("Bank") following notice to the IRS that Long had no account or money at the Bank were unnecessary and, therefore, unauthorized disclosures falling outside the exception provided in § 6103(k)(6). The facts underlying Long's argument are as follows: In 1984, Long sold property to George and Nadine Jarvis, who executed a promissory note to Long. On February 20, 1985, Long notified the Jarvises that he was donating the balance due on the note to the Faith Baptist Church of Louisville, Nebraska, and executed an assignment in favor of the Church in March, 1985. Long and the Jarvises established an escrow account at the Bank to receive the funds which, subsequent to the assignment, the Bank was expected to pay over to the Church. Pursuant to the jeopardy assessment against Long, the IRS issued monthly levies to the Bank from July 23, 1985, to September 15, 1987. The Bank returned the first levy with the notation "Escrow Acct only—No Funds." App. of Appellant, Vol. II at 437. On or about October 7, 1985, the IRS sent a collection summons to the Bank seeking all the records and correspondence surrounding the escrow agreement, and again the Bank responded. Following the issue of

the levies, the Bank began paying over the money assigned to the Church to the IRS.

In July, 1987, the pastor of the Church filed suit against the Bank alleging that the Bank had improperly paid over to the IRS money rightfully belonging to the Church. The Church prevailed in that suit, and judgment was entered against the Bank in May 1989.

■ Long asserts that, under the circumstances, the IRS knew or reasonably should have known that he had no right, title or interest to the escrow account at the bank; therefore, he concludes that the IRS was not authorized to issue levies to the Bank disclosing tax information about him. Br. of Appellant at 42, 45. The basic premise of Long's argument is that he in fact had no interest in the property represented by the escrow account at the Bank. While that may be so for purposes of the Church and the Bank, *inter se,* the Bank's unilateral notation in 1985 that Long had no interest in the escrow account could in no way bind the IRS. The IRS is entitled to scrutinize and challenge transfers of assets by individuals who owe taxes to the federal government. And, as we have previously indicated, the jeopardy assessment against Long was properly made and fully in effect at the time the levies in question were issued. Whether or not Long in fact had funds at the Bank for purposes of the federal tax laws, or had unlawfully transferred assets to defeat the collection of taxes owed, continued to be open questions, especially in the face of a jeopardy assessment stating that Long was attempting to conceal assets by, *inter alia,* putting his property in the names of nominees.

As discussed above, the law permits disclosures of tax return information when necessary to "establish or verify the financial status or financial condition and location of the taxpayer against whom collection action is or may be directed, [and] to locate assets in which the taxpayer has an interest. . . ." Treas.Reg. § 301.6103(k)(6)–1(b)(6). We hold, therefore, that the levies to the Bank were legitimate disclosures made in the course of permitted collection

or investigation activities, and did not violate the nondisclosure provisions of § 6103.

## V. DENIAL OF MOTION TO AMEND COMPLAINT

 Long's final ground of appeal is that the district court erred in denying his motion to amend his complaint under Fed. R.Civ.P. 15(a). Long contends that the amendment was necessary to present additional information regarding his claims of unauthorized disclosures of return information. Appellant's Br. at 47. The district court denied the motion, without explanation, in a Minute Order of April 1, 1991. Appellant's App. Vol. II at 554.

The grant or denial of leave to amend a complaint is within the discretion of the trial court, and we review that determination for an abuse of discretion. *Stichting Mayflower Recreational Fonds v. Newpark Resources, Inc.*, 917 F.2d 1239, 1249 (10th Cir.1990). As a general rule, leave to amend a complaint under Fed.R.Civ.P. 15(a) "shall be freely given when justice so requires" and the district court must give a reason for a refusal. *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir.1987). However, the failure to state a reason can be harmless error where the reason is apparent, as it is here. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1163 (10th Cir.1991) (apparent that amendment unable to cure defect in pleadings).

## CONCLUSION

For the reasons stated above the judgments of the district court dismissing the Colorado Department of Revenue, and dismissing Long's action against the United States and the Internal Revenue Service, are AFFIRMED. The motion by the Colorado Department of Revenue to dismiss the appeal against it on jurisdictional grounds is DENIED.