995 F.2d 1061
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
David & Ann Marie NIEMELA, Plaintiffs, Appellants,
v.
UNITED STATES OF AMERICA, Defendant, Appellee.
 No. 92-2192.
 United States Court of Appeals,
First Circuit.
 June 11, 1993
 
 Appeal from the United States District Court for the District of Massachusetts
 David W. Niemela and Ann Marie Niemela on brief pro se.
 A. John Pappalardo, United States Attorney, James A. Bruton, Acting Assistant Attorney General, Gary R. Allen, David I. Pincus, and Jordan L. Glickstein, Attorneys, Tax Division, Department of Justice, on brief for appellee.
 D.Mass.
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 Before Torruella, Cyr and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Claiming that the Internal Revenue Service (IRS) violated an array of statutory requirements in its effort to collect unpaid taxes, David and Ann Marie Niemela filed this pro se action seeking to "quiet title" to their property and requesting injunctive relief and damages. From an award of summary judgment to the IRS, they now appeal. We agree with the district court's conclusions in all but two particulars, as to which we find the IRS' evidence wanting.
 
 I.
 
 2
 David Niemela, a plumber by trade and a member of an organization opposed to this country's system of income taxation, filed a "protest return" for 1980 on behalf of himself and his wife. For the years 1981 and 1982, the Niemelas filed no returns at all. Prompted by the protest return, the IRS audited their 1979 return and determined that a deficiency existed for that year. The Niemelas sought to challenge this finding in Tax Court, but their petition was later dismissed on procedural grounds. Thereafter, based on "substitute returns" prepared under 26 U.S.C. § 6020, the IRS determined that deficiencies also existed for the years 1980-82. As to these findings, no Tax Court petition was filed. After allegedly making the requisite assessments and issuing the requisite notices, the IRS attempted to recoup the deficiencies-first by levying on money owed to David Niemela by a local school, and then by filing various liens on the couple's real and personal property. The IRS calculates that, as of 1989, a debt of some $180,000 remained unpaid, consisting of back taxes, interest and penalties.
 
 
 3
 The assessment and notice requirements at issue here can be outlined as follows. Upon determining that a deficiency exists, the IRS first must send a notice of deficiency to the taxpayer. 26 U.S.C. § 6212. The taxpayer then has ninety days to file a petition in the Tax Court in order to contest the deficiency determination. Id. § 6213. If such a petition is filed, the IRS is barred from taking any action to collect the debt until the Tax Court decision has become final. Id. §§ 6213(a), 6215. If no such petition is filed (or once the Tax Court decision becomes final), the IRS must then make an assessment of the deficiency, id. § 6203, and send a notice and demand for payment to the taxpayer, id. § 6303. If the deficiency is not paid, a lien arises in favor of the United States on all real and personal property of the taxpayer, id. § 6321, as of the date of the assessment, id. § 6322. The IRS may thereafter levy upon such property after providing the taxpayer with notice of its intention to do so. Id. § 6331.
 
 
 4
 The Niemelas contend that none of these safeguards was followed. In particular, they argue that: (1) no proper notices of deficiency were sent; (2) no assessments of the deficiencies were made; (3) no notices and demands for payment were mailed; and (4) no notice of intent to levy was provided.
 
 
 5
 For these reasons, they say that relief is warranted under the quiet title statute, 28 U.S.C. § 2410(a).[1] They also seek damages pursuant to three other provisions: under 26 U.S.C. § 7431 for unlawful disclosure of return information; under § 7432 for failure to release liens; and under § 7433 for unauthorized collection actions. Finally, they seek an injunction under § 7426 for wrongful levy. Apart from these various claims (each of which the district court rejected), the Niemelas advance an additional contention on appeal: that the district court erred in denying their motion under Fed. R. Civ. P. 56(f) to defer consideration of the summary judgment motion pending further discovery. We review the district court's award of summary judgment in plenary fashion, construing the record in the light most favorable to the opposing party. See, e.g., Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993).
 
 II.
 
 6
 The Niemelas have devoted only cursory attention on appeal to several of these claims, to the point where a waiver might well be inferred. Nonetheless, in light of their pro se status, we shall address each of their contentions in turn.
 
 A. Notices of Deficiency
 
 7
 The IRS submitted copies of two notices of deficiency said to have been sent to the Niemelas: one dated April 6, 1983 pertaining to the year 1979, the other dated September 7, 1988 pertaining to the years 1980-82.[2] The Niemelas argue, somewhat paradoxically, both that no notices of deficiency were sent and that such notices were inadequate in form. Yet in p 50 of their original complaint, they acknowledged having received the notices.[3] And a notice of deficiency is adequate so long as it satisfies the "minimum requirements" of setting forth the amount of the deficiency and the tax year involved. Geiselman v. United States, 961 F.2d 1, 5 (1st Cir.) (per curiam), cert. denied, 113 S. Ct. 261 (1992). The notices here did just that.
 
 
 8
 B. Assessments; Notices and Demands for Payment
 
 
 9
 An assessment is made "by recording the liability of the taxpayer in the office of the [Treasury] Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203.
 
 
 10
 The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.... The date of the assessment is the date the summary record is signed by an assessment officer.
 
 
 11
 26 C.F.R. § 301.6203-1. Within sixty days of an assessment being made, the IRS must "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." 26 U.S.C. § 6303(a). Such notice must be left at the taxpayer's dwelling or usual place of business or sent by mail to his last known address. Id. No particular form is required, so long as the notice "provides the taxpayer with all the information required under ... § 6303(a)." Elias v. Connett, 908 F.2d 521, 525 (9th Cir. 1990).
 
 
 12
 The IRS alleges that, for the 1979 deficiency, an assessment was made and notice sent on January 22, 1985; it states that, for the 1980-82 deficiencies, assessments were made and notices sent on February 9, 1989. To substantiate these claims, the IRS did not submit copies of the summary record, known as Form 23C,[4] nor did it provide copies of the actual notices and demands for payment. Instead, it provided several "certificates of assessments and payments." Known as Form 4340, these are computer-generated transcripts showing all transactions in a taxpayer's account for a particular year. Each of the certificates contains a column entitled "23C Date," which lists the date or dates on which the assessment officer signed a Form 23C. And each contains a notation entitled "First Notice," which documents when notice and demand for payment was sent.
 
 
 13
 We held in Geiselman, in accordance with the vast weight of authority, that such certificates are "routinely used" to prove that the assessment and notice procedures were satisfied. 961 F.2d at 6. More particularly, we held that the 23C Date is presumptive proof that a valid assessment occurred, and that the First Notice is likewise presumptive proof that the IRS gave notice and demand for payment.[5] Id.; accord, e.g., Farr v. United States, F.2d, 1993 WL 86986, at * 2 (9th Cir. 1993 ("certificates were proper evidence of the propriety of the assessment proceedings in all particulars"); Long v. United States, 972 F.2d 1174, 1181 (10th Cir. 1992); Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992); Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991); United States v. Chila, 871 F.2d 1015, 1017-18 (11th Cir.), cert. denied, 493 U.S. 975 (1989).
 
 
 14
 With one exception, the certificates here contain 23C Date and First Notice entries that substantiate the IRS's claim that the assessments were made and the notices mailed on the dates indicated. Nothing offered by the Niemelas calls this evidence as a whole into question. The one exception is the absence in the 1982 certificate of any 23C date corresponding to the alleged February 9, 1989 assessment. On account of this omission, and because the IRS relied solely on the certificate for its proof on this issue, we conclude that a factual dispute remains as to whether a valid assessment occurred for the year 1982.[6] See, e.g., Brewer v. United States, 764 F. Supp. 309, 315-16 (S.D.N.Y. 1991) (issue of fact remained where certificate did not contain 23C dates) (noted in Geiselman, 961 F.2d at 6).
 
 C. Notice of Intent to Levy
 
 15
 As mentioned, the IRS in November 1986 levied on monies owed by the North Middlesex Regional School System to David Niemela, presumably in response to the 1979 deficiency which had been assessed the previous year. The school ended up forwarding approximately $790 to the IRS. The Niemelas claim that no notice of intent to levy was provided, as required by 26 U.S.C. § 6331(d).[7] The government failed to address this claim in its various submissions, either below or on appeal, and the district court made no mention of it in its decision. This is hardly surprising. The Niemelas have advanced a welter of prolix, often far-fetched, allegations, accompanied by a profusion of supporting materials.[8] And their complaint contains only an oblique reference to the alleged lack of notice of intent to levy-identifying such requirement only by statutory citation, not by name.[9] Nonetheless, construing the complaint liberally in light of the Niemelas' pro se status, we think it can and should be read to advance such a claim. We also note that the Niemelas voiced this allegation more explicitly in subsequent submissions, such as in their response to the IRS's motion for summary judgment and in their Rule 56(f) motion to defer. Accordingly, we think a remand is warranted as well for consideration of this claim.[10]
 
 D. Claims for Damages and Injunctive Relief
 
 16
 The Niemelas contend that the IRS is subject to damages for unlawfully disclosing return information to third parties in connection with the issuance of the liens and levy. This claim, as they acknowledge, is largely derivative of those described above. Under 26 U.S.C. § 7431, a taxpayer may recover damages for the intentional or negligent disclosure of return information in violation of § 6103. Section 6103, in turn, establishes the general rule that such information is confidential, subject to various enumerated exceptions. It is well settled that one such exception, contained in § 6103(k)(6), authorizes the disclosure of tax return information to the extent necessary to effect a valid lien or levy.[11] See, e.g., Farr, F.2d at, 1993 WL 86986, at * 3 to * 4; Long, 972 F.2d at 1180; Hughes v. United States, 953 F.2d 531, 542 (9th Cir. 1992); Maisano v. United States, 908 F.2d 408, 410 (9th Cir. 1990); Bleavins v. United States, 807 F. Supp. 487, 488 (C.D. Ill. 1992) ("In other words,the IRS may disclose information when attempting to collect taxes."). Given our earlier findings that the procedures giving rise to the liens with respect to the assessed deficiencies for the years 1979-81 were valid, the Niemelas' § 7431 claim with respect thereto must fail. On the other hand, we have found that factual disputes exist as to whether a proper assessment for 1982 was made and whether a notice of intent to levy was issued. Should it be determined on remand that either of these procedures was deficient, the § 7431 claim should then be addressed to that limited extent. See, e.g., James v. United States, 970 F.2d 750, 757 n.13 (10th Cir. 1992).
 
 
 17
 Such a "contingent" remand is likewise appropriate for the Niemelas' § 7433 claim. That provision permits the recovery of damages for the IRS' intentional or reckless disregard of any provision of the tax laws "in connection with any collection of Federal tax." 26 U.S.C. § 7433(a). The Niemelas claim entitlement to such relief on account of the allegedly deficient assessment and notice procedures discussed above. Again, however, the only potential defects involved the assessment for 1982 and the notice of intent to levy. And because § 7433 applies only to actions occurring after November 10, 1988, see, e.g., Gonsalves v. Internal Revenue Service, 975 F.2d 13, 16-17 (1st Cir. 1992) (per curiam), any defect in the 1986 levy would provide no basis for recovery. By contrast, should the assessment for 1982 be deemed invalid, a § 7433 claim might lie to the extent that the 1989 lien pertained to the deficiency for that year.[12] The district court should likewise address this issue on remand should it prove necessary.
 
 
 18
 The Niemelas' remaining two claims require little comment. Section 7432 authorizes an award of damages where the IRS fails to release a lien in accordance with § 6325-i.e., where the lien is satisfied or unenforceable or a bond is accepted by the Treasury Secretary. There has been no showing that any of these conditions has been satisfied. Section 7426, in turn, permits an award of injunctive relief and damages for wrongful levy. Yet only a person "other than the person against whom is assessed the tax out of which such levy arose" may file such an action. 26 U.S.C. § 7426(a)(1). The Niemelas obviously do not fit such description.
 
 E. Rule 56(f) Motion to Defer
 
 19
 Finally, the Niemelas argue that the district court erred in granting summary judgment to the IRS without allowing them an adequate opportunity to obtain discovery. The Niemelas sought to obtain a multitude of documents pertaining to the assessment and notice procedures, along with depositions of various IRS officials with regard thereto-all without success.[13] They later asked that any ruling on the IRS' summary judgment motion be deferred pending such discovery, and filed a detailed affidavit attempting to explain how such materials would lead to "facts essential to justify [their] opposition" to the motion. Fed. R. Civ. P. 56(f). In the course of its ruling on the summary judgment motion, the district court denied this request on the ground that none of the proposed discovery "could plausibly be said to have led to the development of evidence actually relevant to my disposition of the government's motion." We review an order denying relief under Rule 56(f) for abuse of discretion. See, e.g., Bank One Texas, N.A. v. A.J. Warehouse, Inc., 968 F.2d 94, 100 (1st Cir. 1992).
 
 
 20
 A party seeking a Rule 56(f) deferral must, inter alia, "articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue." Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991); see also Mattoon v. City of Pittsfield, 980 F.2d 1, 8 (1st Cir. 1992) (must show that "specified discoverable material facts" likely exist). While the Niemelas sought materials pertaining to all aspects of the collection process, their request focused on the original documents underlying the assessments-the "supporting records" mentioned in 26 C.F.R. § 301.6203-1 from which Form 23C is prepared. Their request in this respect was two-pronged. They contended that they were specifically entitled to such records under the terms of the regulation. And they argued more generally that obtaining such evidence was their only means of rebutting the presumption of validity arising from the Form 4340 certificates.
 
 
 21
 The IRS' submission of the certificates satisfied the disclosure requirements of 26 C.F.R. § 301.6203-1. That regulation specifies that a taxpayer is entitled only to a copy of the "pertinent parts" of the assessment record.[14] And as the Ninth Circuit has explained:
 
 
 22
 Those pertinent parts need only provide the five items listed in the Regulations [taxpayer's name, date of assessment, character of liability, tax period if applicable, and amounts assessed].... Neither the Tax Code nor the Treasury Regulations require those pertinent parts to be original documents, and the IRS has selected the certificate of assessments and payments as the means for providing the information specified.
 
 
 23
 .... We therefore conclude that the plaintiffs are not entitled to the original supporting documents used to compile the summary record.
 
 
 24
 Gentry, 962 F.2d at 558; see also Hughes, 953 F.2d at 539 & n.4; Chila, 871 F.2d at 1017. With the exception of a "23C Date" for the 1982 assessment, the certificates submitted in the instant case contain all of the specified information.
 
 
 25
 Assuming arguendo that this regulation does not prescribe the range of permissible discovery, we likewise find no abuse of discretion in the court's decision to address the summary judgment motion without affording the Niemelas the opportunity to secure such materials. To be sure, the Niemelas' central argument-that it is difficult, in the absence of discovery, to adduce evidence rebutting the presumption of correctness arising from the certificates-is not without some force. Yet whether or not the supporting documents underlying the assessments might be deemed relevant to their claims,[15] the circumstances here amply support the court's ruling.
 
 
 26
 First, at the root of the Niemelas' Rule 56(f) motion were the allegations that the certificates were inadequate to satisfy the regulation's disclosure requirements and were otherwise inadmissible. As mentioned, these arguments are misplaced. Second, the Niemelas had already obtained many of the underlying documents-including all Forms 23C and their individual master files-through earlier Freedom of Information Act requests. See Brewer, 764 F. Supp. at 318 (denying Rule 56(f) motion, among other reasons, because of information obtained through FOIA requests). Third, apart from their unilateral assertions, the Niemelas articulated no reason to suspect that procedural irregularities attended the assessment process.[16] And the district court was warranted in discounting those assertions, inasmuch as the Niemelas voiced similar allegations with respect to every aspect of the collection process. Fourth, in light of the number of claims advanced and the extent to which they were "wrong-headed" (to use the district court's term), the court could well have concluded that the discovery requests amounted to a "fishing expedition."
 
 
 27
 Finally, we note that the Niemelas' claim in this regard falls under the vast weight of authority. To be sure, a handful of lower courts, in unpublished decisions, have permitted discovery of the original assessment documents or have granted Rule 56(f) motions for that purpose. The Niemelas point to several; others exist. Yet in the clear majority of cases (including dozens of unpublished decisions), courts have denied such relief, even in the face of a proper Rule 56(f) affidavit. See, e.g., Guthrie v. Sawyer, 970 F.2d 733, 738 (10th Cir. 1992); Montgomery v. United States, 933 F.2d 348, 350 (5th Cir. 1991); McCarty v. United States, 929 F.2d 1085, 1088-89 (5th Cir. 1991); Brewer, 764 F. Supp. at 318; Rossi v. United States, 755 F. Supp. 314, 319 (D. Or. 1990), aff'd, 983 F.2d 1077 (9th Cir. 1993). We are unaware of any appellate court reversing such a ruling in this context.[17]
 
 III.
 
 28
 In summary, the judgment is affirmed in part, vacated in part and remanded. On remand, the sole issues are whether the assessment for 1982 was valid and whether the IRS provided notice of intent to levy, along with the damage-claim issues that are contingent upon those findings.
 
 
 29
 Affirmed in part, vacated in part and remanded.
 
 
 
 [1]
 A taxpayer in a quiet title action cannot contest the merits of the underlying tax assessment, but can challenge alleged defects in the procedures giving rise to an IRS lien or levy. See, e.g., Geiselman v. United States, 961 F.2d 1, 6 (1st Cir.) (per curiam), cert. denied, 113 S. Ct. 261 (1992); McMillen v. Department of Treasury, 960 F.2d 187, 189 (1st Cir. 1991) (per curiam). In Geiselman, we noted that courts had divided as to whether a defect in a notice of deficiency may be challenged in such an action. See id. at 6 n.1. We need not address this issue here, however, as the government has not raised it, and as we find no such defect in any event
 
 
 [2]
 Contrary to the taxpayers' suggestion, the IRS does not contend that the second notice was sent on February 9, 1989. Its statement to that effect in its brief is obviously an inadvertent misstatement
 
 
 [3]
 Section 6212 requires only that the IRS mail a notice of deficiency to the taxpayer's last home address, not that the taxpayer actually receive it. See, e.g., Guthrie v. Sawyer, 970 F.2d 733, 737 (10th Cir. 1992); United States v. Zolla, 724 F.2d 808, 810 (9th Cir.), cert. denied, 469 U.S. 830 (1984)
 
 
 [4]
 The taxpayers, however, did obtain copies of the applicable Forms 23C through an earlier Freedom of Information Act request and attached them to their pleadings below. As these documents reveal, and as other courts have noted, a Form 23C contains no individualized information as to any specific taxpayer, but rather simply summarizes the total assessments made by the IRS service center for each class of tax on a particular day. See, e.g., Stallard v. United States, 806 F. Supp. 152, 158 (W.D. Tex. 1992)
 
 
 [5]
 The Niemelas allege that the certificates are inadmissible for sundry reasons-for example, that they lack a Treasury seal, were not properly certified, are hearsay, are not best evidence, and were prepared for purposes of this litigation. These and related arguments have been rejected on numerous occasions. See, e.g., Long v. United States, 972 F.2d 1174, 1181 (10th Cir. 1992); Hughes v. United States, 953 F.2d 531, 539-40 (9th Cir. 1992); McCarty v. United States, 929 F.2d 1085, 1089 (5th Cir. 1991)
 
 
 [6]
 To be sure, there are other intimations in the record that an assessment did occur for that year. The 1982 certificate contains a First Notice entry for February 9, 1989; the sending of notice and demand suggests (but does not confirm) that an assessment was first made. In addition, the liens filed on July 10, 1989 make reference to an assessment for 1982. Most important, the taxpayers have submitted a copy of their Individual Master File (obtained through a Freedom of Information Act request). For the year 1982, in entries dated February 9, 1989, the deficiency, penalties and interest are all listed, together with the notation "ASED." We assume, but are reluctant to conclude without confirmation, that this refers to an assessment. Under the circumstances, we think a limited remand for clarification on this point is warranted-either through a renewed motion for summary judgment or by other means
 
 
 [7]
 See also 26 C.F.R. § 301.6331-2(a):
 Levy may be made upon the salary or wages of a taxpayer for any unpaid tax only after the district director ... has notified the taxpayer in writing of the intent to levy. The notice must be given in person, left at the dwelling or usual place of business of the taxpayer, or be sent by mail to the taxpayer's last known address, no less than 10 days before the day of levy. The notice of intent to levy is in addition to, and may be given at the same time as, the [§ 6331] notice and demand....
 
 
 [8]
 For example, in their original complaint, the taxpayers alleged, inter alia, that the failure to publish Treasury Department delegation orders in the Federal Register deprived the IRS of authority to collect taxes, and that the use of Form 1040 was invalid under the Paperwork Reduction Act of 1980
 
 
 [9]
 The amended complaint asserts ambiguously that the IRS failed to send "valid lawful Notices of Deficiency, or Notices of Assessment and Demand for Payment based on Form 23C Certificate of Assessment and other required documentation, as required by Sections 6212(a) and (b), 6303(a), and 6331(b) and (d)(2) ...." Amended Compl. p 21 (emphasis added). Their original complaint contained identical language
 
 
 [10]
 It appears from the amended complaint that no ongoing levy is in place, and that the taxpayers are seeking simply to recover previously garnisheed wages now in the IRS' hands. If so, a quiet title action may not lie. See, e.g., Farr, F.2d at, 1993 WL 86986, at * 2; Hughes, 953 F.2d at 538. Nonetheless, if the notice of intent to levy were deemed invalid, the taxpayers might still have a viable claim for damages for unlawful disclosure under 26 U.S.C. § 7431. See, e.g., Rorex v. Traynor, 771 F.2d 383 (8th Cir. 1985). We express no opinion on these issues, preferring that the lower court address them in the first instance, if necessary
 
 
 [11]
 Section 6103(d)(6) provides that an IRS employee may, in connection with "his official duties relating to ... collection activity," disclose return information where necessary to obtain information "with respect to the enforcement of any other provision of this title." The accompanying regulation states that such disclosure is warranted in order "to apply the provisions of the Code relating to establishment of liens against [the taxpayer's] assets, or [a] levy on ... the assets to satisfy any [outstanding] liability." 26 C.F.R. § 301.6103(k)(6)-1(b)(6)
 
 
 [12]
 The government argues that the Niemelas' § 7431 claim has been superseded by § 7433, and that their § 7433 claim is barred for failure to exhaust administrative remedies. We leave these issues for the district court to decide in the first instance, if necessary
 
 
 [13]
 The IRS declined to respond to such requests pending decision on its motion to dismiss or in the alternative for summary judgment. The Niemelas then moved to compel production, and the IRS responded with a motion for a protective order. These various motions were never acted on by the court
 
 
 [14]
 Section 301.6203-1 states in relevant part: "If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed."
 
 
 [15]
 Compare, e.g., Guthrie v. Sawyer, 970 F.2d 733, 738 (10th Cir. 1992) (supporting documents not relevant) and McCarty v. United States, 929 F.2d 1085, 1088-89 (5th Cir. 1991) (same) with, e.g., Farr, F.2d at (notwithstanding submission of certificate, taxpayer should have "been given the opportunity to conduct some discovery before judgment was entered") and Rand v. United States, F. Supp., 1993 WL 127098, at * 2 (W.D.N.Y. 1993) (original notices, while "clear[ly] ... relevant," need not be produced)
 
 
 [16]
 The Niemelas place considerable emphasis on an April 1990 IRS memorandum reporting that a small number of irregularities had occurred in the process by which the 23C Forms were signed. Yet, through an FOIA request, the Niemelas received copies of the 23C Forms applicable to their assessments. They have voiced no complaint regarding the signatures appearing thereon. The Niemelas also allege that the number of entries in their individual master files differs from the number appearing on the certificates. Any such discrepancy is beside the point, given that the master files do contain pertinent entries for each of the dates on which the assessments in question here allegedly occurred
 
 
 [17]
 We reject without comment the Niemelas' remaining claims, including the allegation that they were improperly selected for audit