**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 14 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JOSEPH VIERNOW,

     Plaintiff-Appellant,

v.

EURIPIDES DEVELOPMENT
CORPORATION, dba Transworld
Telecommunications, Inc., RONALD A.
KEMPIN, KEVIN M. KEMPIN,
MANUEL C. MARTINEZ, J. B.
BOTTOM & ASSOCIATES, KARL N.
HOLLEY, AMERICAN REGISTRAR
AND TRANSFER CO., and FIRST
EAGLE,

     Defendants-Appellees.

No. 96-4153

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 96-CV-243)**

---

H. Dawson French of French & Hamilton, Dallas, Texas, for Plaintiff-Appellant.

Alexander R. Dahl (James M. Elegante and Scott R. Carpenter with him on the brief), of Parsons Behle & Latimer, Salt Lake City, Utah, for Defendants-Appellees.

---

Before **EBEL** and **HOLLOWAY,** Circuit Judges, and **BLACK,** District Judge.[*]

---

[*]The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, sitting by designation.

**HOLLOWAY,** Circuit Judge.

_____

Plaintiff-appellant Joseph Viernow brought this suit against Euripides Development Corporation (the Corporation)[1] and its three founders, alleging various state law securities and trade practices violations as well as negligence arising out of Viernow's inability to exercise certain stock warrants. The district court granted summary judgment in favor of defendants on all counts, and this appeal followed. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. Background

### A

The Corporation was organized under the laws of Pennsylvania in December 1987, and its principal place of business is in Salt Lake City, Utah. Aplt. App. at 64, 73. In February 1988, the Corporation filed a registration statement with the Securities and Exchange Commission (SEC) for the sale of a maximum of 12,500,000 of the Corporation's "units" at an offering price of $.02 each. Id. at 65, 93. Each unit consisted of one share of common stock, one "A" warrant and one "B" warrant of the Corporation. Id. at 65. Subject to certain conditions precedent described more fully below, holders of "A" warrants were entitled to acquire one share of common stock at $.03 per share and holders of "B" warrants

---

[1]Euripides Development changed its name in November 1993, and is now known as Transworld Telecommunications, Inc. Aplt. App. at 64.

were entitled to acquire one share of common stock at $.05 per share. Id.

Additionally, the warrants contained a notation, in a typesetting consistent with the other language appearing on such warrants, that the "Warrant shall not be exercised by holder in any state where such exercise would be unlawful such as a state in which the Company's common stock is not registered. The Company will not attempt to qualify the shares represented by this Warrant for sale in jurisdictions where holders of the Company's Warrants reside, unless done as a part of the initial registration of its securities." Id. at 158-159. Further, as stated on their face, the "A" warrants expired on December 31, 1988, and the "B" warrants expired on June 30, 1988. Id. However, after a series of extensions by way of corporate resolutions, the warrants were finally deemed to expire on February 28, 1994. Id. at 160-166.

The units were registered with the SEC and various states other than Texas for sale to the public, and the units were sold until June 1989.[2] Aple. Supp. App. at 2. The initial, and only, public offering was completed in July 1989 when the Corporation's underwriter completed the sale of all 12,500,000 units to the public. Id. at 5. None of the stock offered in the initial public offering was sold in Texas. Id. Throughout the duration of the public offering, the registration statement, which included the prospectus,[3] was on file with the SEC. Id. at 2.

---

[2]None of the units in the initial public offering was sold in Texas. Aple. Supp. App. at 5.

[3]The final prospectus is dated February 24, 1989. Aplt. App. at 172.

Viernow, a resident of Arlington, Texas, purchased a total of 315,000 units on the secondary market[4] in Texas in a series of three transactions: (1) on December 15, 1989, Viernow purchased 200,000 units at a price of $.04 per unit;  (2) on January 12, 1990, he purchased 85,000 units at a price of $.04 per unit;  and (3) on January 25, 1990, he purchased 30,000 units at a price of $.04 per unit.  Aplt. App. at 152, 155-157.  In addition to $30 in fees, Viernow paid a total of $12,600 for the units.  Id. at 152.  All such purchases were made through Al Turinsky of West Coast Securities, Inc., a now defunct brokerage firm in Dallas. Id.  At the time of the purchases, the Corporation's stock was not listed on any national exchange, and the units were traded "over the counter."  Id. at 66.  Each of Viernow's units consisted of one share of common stock, one "A" warrant and one "B" warrant.  Id. at 152-53.  In his affidavit, Viernow stated that he did not receive a prospectus at the time of the purchases and he had no knowledge of any restrictions on the sale of the units to residents of Texas.  Id. at 153.

On March 2, 1992, the Corporation approved a reverse stock split of ten for one of all

_____

[4]Viernow did not purchase the units in connection with the initial public offering from the Corporation.  Aple. Supp. App. at 5.  Rather, as Viernow concedes, he purchased the units in the secondary market from a broker in Texas and not from the Corporation or any agent of the Corporation.  Id.; Appellant's Brief at 3-4.  The Corporation did not directly or indirectly deal with Viernow in his purchases.  Aple. Supp. App. at 6.  Further, the Corporation received no income or benefit from secondary market activities, which is controlled by brokers' subsequent buyers.  Id. at 6-7.  Moreover, once the units were sold in the initial public offering, the Corporation had no control over the shareholders' decisions to resell the stock in the secondary market, or to whom the shareholders sold such stock.  Id. at 7.

the issued and outstanding shares. The stock split was approved for the purpose of enhancing the marketability of shares if a secondary market were to develop. Id. at 184. The reverse split thus reduced the common stock owned by Viernow from 315,000 shares to 31,500 shares. Additionally, the underlying common stock which could be purchased upon the exercise of his warrants, assuming satisfaction of certain conditions precedent, was similarly reduced from 315,000 shares to 31,500 shares for each warrant class, for a total of 63,000 shares. As a result of the reverse split, each "A" warrant provided a contingent right to purchase one share of common stock at $.30 per share, and each "B" warrant provided a contingent right to purchase one share of common stock at $.50 per share. Id.

In late summer of 1993, Viernow asked his broker, Ed Clark of Dallas, to determine the value of his stock and warrants. Id. at 153. Clark advised Viernow that each share was worth approximately $3.00, but that he could not sell the warrants until they were registered. Id. In September 1993, Viernow received a form letter from the Corporation stating that "In the near future, the Company intends to submit the necessary filings with the [SEC] and other regulatory agencies so that the A & B Warrants can be exercised." Id. at 185. The letter concluded with the statement that "Although there is no assurance, a public trading market may develop for the warrants." Id. Viernow sold his 31,500 shares of stock through Clark in October 1993 at a price of $3.25 per share, but the warrants were not sold. Id. at 124, 153.

During that time period, both Viernow and Clark contacted representatives of the

Corporation, and they were advised that the warrants could not be exercised until registered, but that such registration was probably imminent. Id. at 123-124, 154. Viernow asserts that the Corporation's stock sold for a high of $6.75 per share at the time in which he was attempting to exercise his warrants. Id. at 154, 187. As noted above, the Corporation finally allowed the warrants to expire on February 28, 1994, after several extensions. Id. at 160-169. The Corporation never registered any shares underlying the warrants, citing limited resources as well as the expense and effort required to effectuate a public offering. Id. at 66. Thus, none of the warrant holders were able to exercise their warrants. Aplt. App. Tab 18 at 12.

**B**

Upon learning that the warrants had expired, Viernow commenced the present suit in January 1995 in the 192nd District Court in Dallas County, Texas, against the Corporation, and its three founders, as well as its attorney, accountant, underwriter and transfer agent associated with the initial public offering. Aplt. App. at 6. Aside from the Corporation and the three founders, the other defendants were not served or were non-suited. Appellant's Brief at 8. In his complaint, Viernow alleged: (1) violations of the Texas Deceptive Trade Practices Act,[5] (2) violations of the Texas Securities Act, (3) negligence in failing to insure that the units were not sold to Texas residents, (4) conspiracy to not register the common stock underlying the warrants, (5) breach of duty of due care and fair dealing, and (6) the

---

[5]This claim was withdrawn at the August 12, 1996, summary judgment hearing and Viernow did not raise this issue on appeal.

restrictions and limitations on the warrants are void as restraints on trade.[6] Aplt. App. at 12-

17. In February 1995, defendants removed the present case to the United States District

Court for the Northern District of Texas under diversity jurisdiction. Aplt. App. at 1.[7] In

January 1996, pursuant to defendants' motion, the district court transferred the case to the

United States District Court for the District of Utah.[8] Aplt. App. at 1, 3.

## C

In March 1996, defendants filed a motion for summary judgment and brief in support.

Aplt. App. at 45-48. Viernow responded to the motion, attempting to raise several issues for

the first time:[9] (1) the warrant restrictions which prohibited Viernow from exercising his

---

[6]Viernow's claims regarding negligence in failing to prevent the sale of units to Texas residents, civil conspiracy, and restraint on trade are not presented and argued on appeal, and we therefore treat them as abandoned.

[7]The Texas federal court's Memorandum and Order of January 31, 1996, that transferred this case to Utah states, p. 2, that the notice of removal invoked the federal court's jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

[8]Viernow states in his opening brief that the case was transferred to the district court in Utah under the doctrine of *forum non conveniens*. Appellant's Brief at 8-9, 16. However, we have determined that we should treat the transfer as based on lack of personal jurisdiction. See Part II-A, infra.

[9]Issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed. R. Civ. P. 15. See generally, Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991) (a plaintiff should not be prevented from pursuing a valid claim just because he did not include it in his complaint, provided that a late shift in the case will not prejudice the other party in maintaining his defense). See also United States ex rel. Schumer v. Hughes Aircraft Company, 63 F.3d 1512, 1524 (9th Cir. 1995) ("when a party raises a claim in materials filed in opposition to a motion for summary judgment, the district court should treat the filing as a request to amend the pleadings and should consider whether the evidence presented creates

-7-

warrants are invalid under Utah law since they are not conspicuously noted; (2) the directors of the Corporation breached their fiduciary duty to warrant holders by wrongfully refusing to register the stock underlying the warrants or allow Viernow to exercise them; [10] (3) the Corporation should be estopped from asserting that the warrants expired in light of repeated representations that the warrants would be registered and Viernow would be able to exercise them; (4) defendants never actually intended to allow Viernow to exercise the warrants; (5) the directors had a conflict of interest "in refusing to register the Warrants or allow exercise thereof and thereby avoid any dilution which would have been suffered by them in their stock ownership in the Corporation if the Warrants were exercised;" and (6) the Corporation, by failing to take steps to insure that the warrants were not sold to Viernow in Texas, "affirmed such state and delivery and waived any right it might have had to refuse to register Plaintiff's Warrants or to prohibit him from exercising them." Aplt. App. at 103-104.

On August 12, 1996, the district court heard argument on defendants' summary judgment motion. At the hearing Viernow raised another issue for the first time, i.e., that because the Corporation was incorporated under the laws of Pennsylvania, Pennsylvania law required the warrant restrictions to be conspicuously noted. Aplt. App. Tab 18 at 16.

---

a triable issue of material fact."), vacated on other grounds, Hughes Aircraft Company v. United States ex rel. Schumer, 117 S. Ct. 1871 (1997).

[10]The exact argument as stated by Viernow was that the Directors of the Corporation "wrongfully [refused] to register the Warrants or allow Plaintiff to exercise his Warrants." Aplt. App. at 103-04. Viernow's argument fails to perceive that the critical requirement was that the underlying stock, and not the warrants, was what had to be registered. Aplt. App. Tab 10 at 158-59.

Viernow additionally asserted that this conspicuous notation requirement is substantially the same under the laws of Utah and Texas as well.[11] Id. Viernow also argued at the hearing that when the Corporation discovered that the units were sold to a Texas resident, where the stock was not registered, the transfer agent should have instructions to break that transaction.[12] Aplt. App. Tab 18 at 18. Further, Viernow represented that had he known that the Corporation would not register the warrants, he would have "gone through his broker to register the outstanding stock in Texas himself." Id. at 21-22.

Viernow argued that the directors of the Corporation intentionally refused to permit the shareholders to exercise their warrants in an effort to prevent their own stock in the Corporation from being diluted in value, which Viernow claims is a breach of fiduciary duty. Id. at 33. Defendants countered that the conditions precedent were never fulfilled, and, as such, the warrants never became exercisable, and, secondly, the Corporation exercised its discretion in not fulfilling the conditions precedent due to the expense and effort involved in registering the underlying shares. Id. at 34. Lastly, Viernow argued that the Corporation's representations to the effect that the underlying stock would be registered amounted to fraudulent or negligent misrepresentation. Id. at 39-40.

At the conclusion of the hearing, the judge stated that based on the briefing and oral

---

[11]Defendants responded that the laws relating to conspicuous disclosures relate to stock certificates, not warrants. Aplt. App. Tab 18 at 31.

[12]To this argument, the court noted that if the transaction had been voided, Viernow wouldn't have made the profit he did. Id. at 18.

argument, he felt "confident in ruling from the bench." Id. at 41. He held that,

> The motion for summary judgment is granted. I find that the petition is inadequate to set forth a viable cause of action under any of the theories advanced in the petition, in light of the motion for summary judgment and the facts that have been brought forward by the defendants and that are truly uncontroverted. This is a case, in my view, where the pertinent facts truly are uncontroverted. And the Court finds that part of those uncontroverted facts include the conditions precedent to the exercise of the warrants.

> The reference to Pennsylvania law today is not appropriately before the Court. If it is what it appears to be, it appears to the Court to be inapplicable as this case does not pertain to a transfer or registration of stock, it pertains to conditions precedent to the exercise of rights under these warrants. The plaintiff or any other person purchasing those warrants was notified of the conditions that existed and the conditions that had to occur before the exercise of those warrants would be available to the purchaser.

> It is hard for me to communicate in any quick way here from the bench much more than that. There is no way a reasonable finder of fact here could find fraud. The closest you come in my view, Mr. French [counsel for Plaintiff-Appellant], is on the theory of estoppel of the statements that were made. The law is very clear these days about statements about future intentions, and the plaintiff had incumbent on him at this point in time to have communicated by way of pleading or in response to the motion for summary judgment, specific facts to show that when those statements were made they were made knowing that they were false and made solely to induce the plaintiff to do something that he wouldn't otherwise have done. I find this factual record just completely inadequate in that regard.

> I do think Mr. Elegante [counsel for Defendants-Appellees] is correct in his reference to this case as a moving target. It seems to change from time to time, including right up until oral argument today when we have been confronted with Pennsylvania law. That just is not properly before the Court, especially under the recent standards set forth in Celotex and the other series of relatively recent summary judgment decisions by the U. S. Supreme Court.

> It was incumbent upon the plaintiff after the affidavits and the factual indications submitted by the defendants to come forward with facts to rebut those. The plaintiff just has not met that burden and for all of those reasons

-10-

the motion for summary judgment is well taken and granted.

Aplt. App. Tab 18 at 41-42.

The order granting summary judgment in favor of defendants was entered on September 9, 1996,[13] Aplt. App. at 254-56, and the judgment for defendants was entered that day. Aplt. App. at 257-58. On August 23, subsequent to the hearing but before judgment was entered, Viernow filed a motion for leave to file an amended complaint. Aplt. App. at 190. The record does not indicate that the district court expressly ruled on this motion. Viernow filed his notice of appeal on September 16, 1996, id. at 259, stating he is raising: (1) the warrant restrictions are unenforceable; (2) negligent misrepresentation; (3) promissory estoppel; (4) breach of fiduciary duty; (5) breach of the covenant of good faith and fair dealing; (6) securities fraud; (7) common law fraud; and (8) error in not permitting Viernow to amend his complaint. Appellant's Brief at 1-2.

## II.  Analysis

---

[13]Fed. R. Civ. P. 52(a) provides that findings of fact and conclusions of law are unnecessary when ruling on a motion for summary judgment and none were stated here. Reasons for the ruling are helpful, see Gomez v. American Electric Power Service Corp., 726 F.2d 649, 651 n.4 (10th Cir. 1984) (citing 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2716, at 647-50 (2d ed. 1983)), and here the judge did, in fact, provide the reasoning behind his ruling in statements made from the bench. See Stewart v. United States, 716 F.2d 755, 766 (10th Cir. 1982). Additionally, even if such reasoning was not provided by the judge below, a "grant of summary judgment . . . may be upheld on any grounds supported by the record." Hill v. Ibarra, 954 F.2d 1516, 1525 n.4 (10th Cir. 1992); Medina v. City and County of Denver , 960 F.2d 1493, 1500 (10th Cir. 1992) (we may "review the record ourselves to see if the summary judgment order may be upheld" on any grounds adequately presented below).

In our *de novo* review of the grant of summary judgment, we must apply the same legal standard utilized by the district court. Allen v. Muskogee, Oklahoma, 119 F.3d 837, 839 (10th Cir. 1997), cert. denied, 118 S. Ct. 1165 (1998). That is, summary judgment is only appropriate if the "pleadings, depositions, . . . and admissions . . ., together with the affidavits, . . . show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The factual record and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. Allen, 119 F.3d at 839-40. If there is no dispute concerning a genuine issue of material fact, we next determine whether the district court correctly applied the substantive law. Peck v. Horrocks Engineers, Inc., 106 F.3d 949, 951 (10th Cir. 1997).

### A.  Choice of Law

The issues involved herein arguably give rise to the application of the laws of three states. The Corporation was established under the laws of Pennsylvania; the principal place of the Corporation's business is in Utah; and most of the relevant events giving rise to the cause of action occurred in Texas, which is also where Viernow is domiciled. As noted above, the instant case was originally filed in state court in Texas and subsequently removed by defendants on diversity grounds to the United States District Court for the Northern District of Texas, which later transferred the case to the United States District Court for the

District of Utah.[14]

As we stated in <u>Trierweiler v. Croxton and Trench Holding Corp.</u>, 90 F.3d 1523, 1532 (10th Cir. 1996), generally "a federal trial court sitting in diversity applies the forum state's choice of law. . . . However, where a case is transferred from one forum to another under 28 U.S.C. § 1404(a) . . ., then the transferee court must follow the choice of law rules of the transferor court." (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 635-37 (1964)). The rule is different, however, in cases where the transferor court determines that it lacks personal jurisdiction. In such cases, the transferee jurisdiction's substantive and choice of law rules apply so long as the transfer did in fact cure a jurisdictional defect, as we note below. <u>Trierweiler</u>, 90 F.3d at 1532. We note below that the proper course of action since the enactment of 28 U.S.C. § 1631 is to transfer pursuant to that statute,[15] which requires that the

_____

[14]In his brief, Viernow states that "it is assumed for the purposes of this brief that Utah is the forum for this case." Appellant's Brief at 16. However, noting that the law of several different jurisdictions may be implicated in the present case, he states that his "brief accordingly cites federal, Texas and Utah cases since the transaction involving securities could be subject to regulation by all three." <u>Id.</u> He also asserts that since the Corporation is organized under the laws of Pennsylvania, that state's law governs, (1) corporate matters involved in the conduct of the business of the Corporation, (2) the duties owed by the Corporation and its officers and directors to its shareholders, (3) the rights of the Corporation's shareholders, and (4) the validity of the warrant restrictions. <u>Id.</u> at 15, 17.

When pressed at oral argument on appeal, defendants' counsel similarly stated that since the Corporation was registered in Pennsylvania, that state's law probably applies with respect to the warrant restrictions.

[15]Section 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of

-13-

transferee court apply that jurisdiction's law. Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524, 1526-27 (10th Cir. 1987). We hold that Utah law must be applied here, including its choice of law rules.

In Ross, we stated that by enacting "the Federal Courts Improvement Act of 1982, . . . Congress gave broad authority to permit the transfer of an action between any two federal courts. 28 U.S.C. § 1631 controls the action of a federal court when it finds that it lacks jurisdiction but that another federal court has jurisdiction." Id. at 1526. See also United States v. American River Transportation, Inc., 150 F.R.D. 587, 590 (C.D. Ill. 1993) (recognizing that some courts have construed § 1631 narrowly to apply only to cases in which the transferring court lacks subject matter jurisdiction, but noting that the Tenth Circuit in Ross held that courts should transfer actions under § 1631 when personal jurisdiction is lacking even though the transferor court has subject matter jurisdiction). In Ross we noted that prior to the enactment of § 1631 in October 1982, some courts had broadly construed § 1406(a) to permit transfer where personal jurisdiction was lacking but where venue was proper, a result arguably at odds with the plain language of § 1406(a). Ross, 822 F.2d at 1527. With the enactment of § 1631, however, this strained and

jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

-14-

"extraordinarily broad" reading of § 1406 is no longer necessary. Id. Moreover, § 1631 makes it clear that whenever an action is transferred for want of personal jurisdiction, the law of the transferee state controls. Id. This follows from the language of § 1631 which says that after transfer for lack of jurisdiction, "the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred . . . ." See also Western Smelting & Metals, Inc. v. Slater Steel, Inc., 621 F. Supp. 578, 582 (N.D. Ind. 1985).

We are convinced we should treat the case as transferred from the Northern District of Texas for lack of personal jurisdiction, despite uncertainty that results from the transfer order.[16] In its Memorandum Opinion and Order of January 31, 1996, that court found there

_____

[16]As noted, § 1631 provides that, once a court finds that it lacks personal jurisdiction, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." Consequently, before a court may properly transfer under §1631, "the district court in which the action . . . originally was filed must ascertain that the proposed transferee court is one in which the action 'could have been brought at the time it was filed . . . .'" 17 Moore's Federal Practice, § 111.53 (Matthew Bender 3d ed.). See also United States v. Heller, 957 F.2d 26, 27 (1st Cir. 1992) (§ 1631 makes it clear that in order for transferor court to decide whether the requirements for transfer are met, such court must first decide whether the action could have been brought in the transferee court at the time it was filed). When transferring under § 1631 for lack of personal jurisdiction, the district court seeking to effect the transfer is therefore required to first satisfy itself that the proposed transferee court has personal jurisdiction over the parties. See Grimsley v. United Engineers and Constructors, Inc., 818 F. Supp. 147, 148-49 (D.S.C. 1993).

While it appears that the United States District Court for the Northern District of Texas did not expressly determine that the District of Utah would have personal jurisdiction over the parties in this case, we are satisfied that the transfer is not reversible error. First, the district court in Texas did state that the Corporation has its principal place of business in Utah, which would clearly provide the Utah courts with personal jurisdiction over the Corporation. Memorandum Opinion and Order at 6. Moreover, the parties do not argue that the District of Utah lacked personal jurisdiction and, therefore, the issue is waived. Williams

-15-

was no proper showing for the exercise of specific personal jurisdiction, id. at 5, or of general

personal jurisdiction, p. 7, and that the exercise of such jurisdiction should be declined in

light of traditional notions of fair play and substantial justice. Id. at 8.[17] The judge then

turned to the alternative motion for transfer to a more convenient forum pursuant to 28

U.S.C. § 1404(a), and considered the factors favoring a transfer to Utah. The order in its

"Conclusion" stated that the defendant's "Motion to Dismiss or Alternative Motion to

Transfer is hereby GRANTED," and that "IT IS ORDERED that this civil action . . . be

transferred to the United States District Court for the Central District of Utah."[18] Id. at 10.

It is asserted by plaintiff Viernow that the case was transferred under the doctrine of

*forum non conveniens* and it must be conceded that there is a substantial basis for that

assertion. No claim of error is made by Viernow as to the law applied by the district judge,

---

v. Life Savings & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986) ("A defect in the district court's jurisdiction over a party . . . is a personal defense which may be asserted or waived by a party."). Accordingly, we decline to disturb the transfer to the District of Utah. See also Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 819 (1988) (although situations may arise in which the transferee court considers the transfer "clearly erroneous," and therefore seeks to transfer the case back to the transferor court, the doctrine of the law of the case provides that such retransfers "should necessarily be exceptional," and "if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end.").

[17]We take judicial notice of that order which is a matter of public record of that court. See Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1502 n.12 (10th Cir. 1994).

[18]The reference to the "Central District of Utah" was an inadvertent error. Utah has only one judicial district comprising two divisions, the Northern and Central Divisions. See 28 U.S.C. § 125.

and the judge did not make a determination on the law to be applied in his oral announcement of his ruling or in his written judgment. We feel that we should treat the law of Utah as controlling, both its choice of law rules and its substantive law, in light of § 1631 and our Trierweiler and Ross opinions.[19] We accordingly will analyze the issues on appeal under Utah law, but also will note the effect of Pennsylvania and Texas law as they are also raised.

## B. Warrant Restrictions

Viernow argued below that the restrictions on exercising his warrants contained on the warrants are invalid and unenforceable as to him under both Utah and Pennsylvania law because they were not conspicuously noted on the face or back of the instrument.[20] On appeal, however, Viernow appears to rely exclusively on Pennsylvania law, Appellant's Brief

---

[19]We note that Utah has adopted the Restatement's "most significant relationship" test as "the appropriate rule for Utah courts to apply to a conflict of laws question in a contract dispute." American National Fire Ins. Co. v. Farmers Ins. Exchange, 927 P.2d 186, 190 (Utah 1996) (citing of Restatement (Second) of Conflict of Laws § 188). Utah has similarly adopted the Restatement's "most significant relationship" test with respect to a tort action. Forsman v. Forsman, 779 P.2d 218, 219-20 (Utah 1989) (citing Restatement (Second) of Conflict of Laws § 145). See also American National, 927 P.2d at 190 (noting that the Utah Supreme Court in Forsman applied the Restatement of Conflict's most significant relationship test to determine the applicable law in a tort action).

[20]In his response to defendants' motion for summary judgment, Viernow alleged for the first time that the warrant restrictions violate the conspicuous notice requirement under Utah law, U.C.A. § 16-10a-627. Aplt. App. Tab 7 at 103. At oral argument below on summary judgment, Viernow similarly argued for the first time that such restrictions violate Pennsylvania notice requirements, as well as those of Utah and Texas. Aplt. App. Tab 18 at 16.

at 17, which the trial judge said was not properly before the district court.[21] Aplt. App. Tab 18 at 41. The judge then stated that the Pennsylvania provision relied on "appears to the Court to be inapplicable as this case does not pertain to a transfer or registration of stock, it pertains to conditions precedent to the exercise of rights under these warrants." Id. We agree.

In resolving the issue of conspicuousness of restrictions, we examine both Pennsylvania and Utah law, and we conclude that Viernow's claim must fail under the law of either jurisdiction.[22] As discussed above, each of the warrants contains a restriction on its face providing that such warrants "shall not be exercised by holder in any state where such exercise would be unlawful such as a state in which the Company's common stock is not registered. The Company will not attempt to qualify the shares represented by this Warrant for sale in jurisdictions where holders of the Company's Warrants reside, unless done as a

---

[21]Although the judge did not elaborate on the issue, he apparently treated the allegation under Pennsylvania law as a request to amend the pleadings under Fed. R. Civ. P. 15, which he denied by concluding that Pennsylvania law was not properly before the court. Additionally, the very issue of the conspicuous notice requirement was first raised in Viernow's response to the defendants' motion for summary judgment, where he purported to invoke Utah law. Hence, the notice issue, not being raised prior to Viernow's response to the summary judgment motion, may properly be construed as a request to amend the pleadings under Rule 15. It is arguable that the district court impliedly permitted Viernow to amend his complaint to include the issue of notice by allowing Viernow to present argument on the matter at the hearing. Thus, we treat the issue as being properly considered below and will address it and Pennsylvania law along with it.

[22]At oral argument on appeal, defendants represented that Pennsylvania law probably governs this issue.

part of the initial registration of its securities."[23]  Aplt. App. Tab 10 at 158-59.  This language

was not set apart from the other provisions contained on the warrants, and it was not printed

in bold or different typeface.  However, although we concede that the restriction as worded

on these warrants was not "conspicuous" under the statutes, this does not strengthen

Viernow's claim for two reasons.  First, it was a restriction that did not pertain to stock, but

to warrants.  Second, the statute's requirements apply to the *transfer* of stock, and not to the

*exercise* of warrants.

It is clear to us that neither Pennsylvania nor Utah law provide any comfort to

Viernow on this issue.  The statutes cited by Viernow expressly provide that the conspicuous

notice requirements relate only to restrictions on the *transfer* of securities.  See 13

Pa. Cons. Stat. Ann. § 8204; 15 Pa. Cons. Stat. Ann. § 1529(f); U.C.A. § 16-10a-627.[24]  There

---

[23]A similar restriction is contained in paragraph 14 of the prospectus, which provides, in part, that the "warrants are not exercisable unless a registration is currently effective in the state where the Warrant holder resides.  The Company intends to maintain a registration for the securities and warrants only in those states where the initial offering is registered. Persons who hold the warrants and do not reside in one of those states will not be able to exercise their warrants."  Aplt. App. Tab 6 at 77.  The same information was stated later in the prospectus in a section entitled "Warrants."  Id. at 90.

[24]We note that U.C.A. § 16-10a-627 was enacted in 1992, subsequent to Viernow's purchase of his units.  1992 Utah Laws Ch. 277, §§ 53, 249.  However, a similar Utah statute was in effect at the time Viernow purchased his units, which provided that "A restriction on transfer of a security imposed by the issuer . . . is ineffective against any person without actual knowledge of it unless: (1) the security is certified and the restriction is noted conspicuously on the instrument . . . ," U.C.A. § 70A-8-204 (amended 1996).  The result is the same under either statute, however, since Viernow sought to exercise his warrants, not transfer securities. Thus, neither statute provides Viernow with a legal basis for his assertion that the restriction contained on the warrants must have been conspicuously noted in order to be effective as against him.

may be a question as to whether the warrants may properly be considered securities, but in any event we have no trouble concluding that the conspicuous notice requirement contained in these statutes does not apply here. This case does not involve a purported restriction on the *transfer* of securities, and Viernow makes no such claim. Rather, the instant case involves an attempted *exercise* of certain warrants by a holder who, under the restriction, was precluded from exercising such warrants. Since we see nothing in the laws of Pennsylvania or Utah which imposes a conspicuousness requirement on notices restricting the exercise of warrants, we hold that the trial court properly granted summary judgment on this issue.

## C. Negligent and Fraudulent Misrepresentation

Viernow contends that defendants negligently or fraudulently misrepresented their decision and intention to register the warrants and allow them to be exercised. Viernow relies on § 552 of the Restatement (Second) of Torts as grounds for his negligent misrepresentation claim and common law fraud as grounds for his fraudulent misrepresentation claim.[25] Defendants counter, however, that Viernow failed to raise such claims below, and, consequently, he is barred from raising them here. We disagree and turn

---

[25]Section 552(1) states:

**§ 552. Information Negligently Supplied for the Guidance of Others**

**(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.**

to the merits of these claims.

It appears that under both Utah and Texas law, claims of negligent misrepresentation and fraudulent misrepresentation share at least one common element: Viernow must have suffered a loss as a direct result of his foreseeable, justifiable or expected reliance on the alleged misrepresentations of the Corporation in order to recover on these claims. See Dugan v. Jones, 615 P.2d 1239, 1246 (Utah 1980) (elements of fraudulent misrepresentation); T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992) (same); Price-Orem Investment Co. v. Rollins, Brown and Gunnell, Inc., 713 P.2d 55, 59 (Utah 1986) (elements of negligent misrepresentation); Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). Viernow failed to establish this element.

Even if we were to agree that the Corporation fraudulently or negligently led Viernow to believe that the warrants would be exercisable at some future point, he can show no harm caused thereby. Viernow did not act or refrain from acting in reliance upon such representations in such a manner that occasioned him to suffer a loss. In this respect, Viernow contends that had he known that the Corporation was not going to register the warrants, he would have registered them himself in an effort to exercise them. We agree with defendants, however, that such an argument fails to recognize that even if Viernow successfully registered the warrants, they could never have been exercised until the Corporation registered the underlying shares. Thus, even if Viernow had taken all of the actions which he claims he refrained from taking in reliance upon the Corporation's

representations, he still could not have exercised the warrants. There is simply nothing Viernow could have done to exercise his warrants, regardless of whether the alleged representations were made or not. Hence, Viernow cannot show that he relied upon the alleged representations to his detriment. These warrants were subject to the condition precedent of the Corporation requiring registration of the underlying shares for the warrants to be exercised. See Aplt. App. Tab 6 at 77. This never happened, and, consequently, the condition was never satisfied.

Further, Viernow makes no claim that he was induced into buying the units based on representations from defendants that he would be able to exercise the warrants at some future point. Moreover, even if the Corporation had registered the underlying shares, the plain language of the warrants, as well as the prospectus, precluded Viernow, as a resident of Texas, from exercising them. We therefore hold that Viernow's claims of negligent and fraudulent misrepresentation failed and the summary judgment on these claims was correct.

### D. Promissory Estoppel

Viernow argued below that defendants should be estopped from allowing the warrants to expire without the options being exercised due to defendants' representations that the holders of such warrants would be allowed to exercise them. The record reveals that this issue was initially raised in Viernow's response to defendants' summary judgment motion.[26]

---

[26]As with the issues of negligent and fraudulent misrepresentation, the allegation of estoppel, raised for the first time in Viernow's response to the motion for summary judgment, may properly be treated as a request to amend under Rule 15. Since the district court

The district judge found that although the theory of estoppel is perhaps the most viable claim in the present case, the record is inadequate to support such a claim. Aplt. App. Tab 18 at 42.

In order to make out a claim under estoppel, Viernow bears the burden of establishing the following elements: (1) a promise reasonably expected to induce action or forbearance, (2) such promise did in fact induce such action or forbearance, and (3) Viernow suffered detriment as a result.[27] As with his claims under negligent and fraudulent misrepresentation, however, Viernow cannot show that any action or forbearance on his part, occasioned by the defendants' alleged promises to make the warrants exercisable, led to any loss or harm. Although Viernow argues that the promises induced forbearance on his part, there is simply nothing Viernow could have done in order to make the warrants exercisable or otherwise to exercise his warrants. This is not a case in which Viernow, relying on the promises of the Corporation, chose not to do something that he could have otherwise done, which thereby caused him to suffer any injury. Viernow's argument that he would have registered the warrants had he not been mislead by defendants is unavailing, since any such registration would not have changed the fact that the warrants could not have been exercised without the

_____

permitted argument on this issue at the summary judgment hearing, and specifically addressed the issue in his ruling, Aplt. App. Tab 18 at 42, we feel that the judge permitted such amendment and it was adequately presented below.

[27]The elements of promissory estoppel are substantially the same under Utah and Texas law. Andreason v. Aetna Cas. & Surety Co., 848 P.2d 171, 174-175 (Utah Ct. App. 1993); El Paso Healthcare System, Ltd. v. Piping Rock Corp., 939 S.W.2d 695, 699 (Tex. App. -- El Paso 1997, writ denied).

Corporation's registration of the underlying shares. Hence, Viernow failed to show any detrimental reliance.

Additionally, there is no indication that Viernow purchased his units in reliance upon any promise from the Corporation that he would be able to exercise the warrants at some future date. On the contrary, the prospectus clearly provides in paragraph 14, "Exercise of Warrant Uncertain" (emphasis in original), that such warrants may never be exercisable by any holder, Aplt. App. Tab 6 at 77, and, moreover, the prospectus together with the warrants restrict Viernow's alleged right, as a Texas resident, to exercise them.[28] That is, as a member of an ineligible class of holders, Viernow could not have exercised his warrants in any event.

### E. Fiduciary Duty and Covenant of Good Faith and Fair Dealing

Viernow contends that the directors of the Corporation owned approximately 76% of its outstanding common stock and were presumably aware of the Corporation's true plans and intentions not to register the warrants. Similar to his arguments regarding promissory estoppel and misrepresentation, Viernow asserts that he relied upon assurances that the Corporation would continue to extend the warrants until they could be registered and subsequently exercised. This, Viernow suggests, also forms the basis of his fiduciary duty claim.

---

[28]As noted in n.23, supra, the prospectus contained a statement in paragraph 14 that the company intended to maintain a registration for the securities and warrants only in those states where the initial offering was registered. The stock and warrants were not registered in Texas, where Viernow was a resident. See Aple. Supp. App. at 2 (Affidavit of Mr. D'Ambrosio).

However, even assuming that the directors of the Corporation owed a fiduciary duty to Viernow individually, a proposition clearly contrary to the majority rule, Lochhead v. Alacano, 662 F. Supp. 230, 232 (D. Utah 1987), and that this duty was breached in the making of misleading representations that the warrants would be exercisable, Viernow can show no harm. The simple fact is that Viernow, as a Texas resident, could not have exercised his warrants in any event.[29] Thus, even assuming that the individual officers and directors of the Corporation instilled a reasonable belief in warrant holders residing in states where the initial public offering was registered that their warrants would be exercisable, such a belief could not have been reasonable with respect to Viernow. Further, there is no indication that Viernow either purchased the warrants in reliance upon such alleged representations or that he would have relocated to a state in which he would have been eligible to exercise his warrants had the Corporation registered the underlying stock.

Viernow's good faith and fair dealing argument similarly must fail. Both parties cite and rely upon Republic Group, Inc. v. Won-Door Corp., 883 P.2d 285 (Utah App. 1994), for establishing the standard of good faith controlling here. Republic Group stands for the proposition that under the doctrine of good faith and fair dealing, "the parties constructively

---

[29]As noted in n.23, supra, paragraph 14 of the "Risk Factors" section on page 8 of the prospectus is pertinent here. The final sentence of the paragraph states that: "persons who hold the warrants and do not reside in one of those states [where the initial offering is registered] will not be able to exercise their warrants." Aplt. App. Tab 6 R 77. Thus, it would not have been reasonable for Viernow, a resident of Texas where the initial offering was not registered, to have believed that his warrants would be exercisable.

promise that they will not intentionally or purposely do anything to destroy or injure the other party's right to receive the fruits of the contract. Compliance with this covenant or duty depends upon the agreed common purpose and justified expectations of the parties." Id. at 291.

The Corporation makes the sound argument that any right to exercise the warrants was subject to conditions precedent, which were never satisfied, and, as such, no warrant holder had the right to exercise them at any time. Even taking all Viernow's allegations as true, i.e., that defendants breached their duty of good faith and fair dealing by misleading him, he cannot prevail under this theory. First, as a warrant holder residing in Texas, he never had any right to receive the fruits of the warrants because the stock and warrants of the initial public offering were not registered in Texas. Viernow had no justified expectation of ever exercising the warrants as long as he resided in Texas, in light of the restrictions plainly set forth on the face of such warrants and contained in the prospectus.

In sum, the claim of breach of fiduciary duty and of the covenant of good faith and fair dealing was properly rejected by the summary judgment.

### F.  Securities and Common Law Fraud

On appeal, Viernow claims that defendants violated Section 10(b) of the Securities and Exchange Act, Rule 10b-5, and engaged in common law fraud. However, our review of the record reveals that these issues were not raised in the district court, and, accordingly, "we will not consider them on appeal." Harris v. Champion, 51 F.3d 901, 907 (10th Cir.

1995) (citing <u>Lyons v. Jefferson Bank & Trust</u>, 994 F.2d 716, 720-21 (10th Cir. 1993) (we exercise our discretion to hear issues raised for the first time on appeal only in the most unusual cases)).

Viernow also relies on Tex. Rev. Civ. Stat. Ann. art. 581-33 (West 1964) of the Texas Securities Act, a claim which he did present below. In his original complaint, Viernow alleged that the manner in which the Corporation structured and sold the initial public offering violated Article 581-33 because the units could be and were sold to residents of Texas notwithstanding the fact that the securities were not registered in Texas. In his brief on appeal, Viernow claims that if the Corporation did not intend to register the warrants so as to allow them to be exercised, its statements were not truly reflections of its future intent, but misrepresentations of state of mind at that time. Appellant's Brief at 28.

Article 581-33 generally provides for civil liability for persons who offer or sell securities in violation of the Texas registration requirements, Article 581-33A(1), and for any person who offers or sells a security by means of an untrue statement of material fact or fails to state a material fact necessary to make the statements made not misleading. Article 581-33A(2). While Viernow seemed to rely on subsection A(1) in his original complaint, Aplt. App. at 13, it is clear that he now relies on subsection A(2). Appellant's Brief at 28-30.

With respect to subsection A(1), there is no indication in the record that the any of the defendants intended to offer securities in Texas or in fact did offer such securities in Texas. Rather, the record reveals that the securities which Viernow purchased in Texas were sold

by an independent broker in the secondary market. Moreover, it is clear that the statute of limitations barred this action seeking damages arising out of a violation of subsection A(1). Article 581-33H(1) provides that any such action may not be brought more than three years after the date of the sale. Brief of Defendants-Appellees at 20; Memorandum in Support of Defendants' Motion for Summary Judgment. Aplt. App. Tab 5 at 64. Here, Viernow completed his purchase of the units in January of 1990, but he did not bring this action until January of 1995, well beyond the limitations period.

Viernow's argument under subsection A(2) is similarly flawed. There is no indication that any representations were made to Viernow by the defendants, at the time he purchased the units, that he would ever be able to exercise his warrants. Thus, Viernow simply cannot meet the requirement of subsection A(2) to show that the units were sold by means of an untrue statement of material fact or an omission to state a material fact necessary to make statements made not misleading. Rather, the "untrue" statements of which Viernow now complains were actually made between late 1992 and early 1994. Aplt. App. 123-124, 153-154, 181, 183. These statements, however, do not come with the ambit of subsection A(2) since they played no part in the 1989 and 1990 sales of the units inasmuch as no one offered or sold the units in 1989 or 1990 by means of these allegedly untrue statements made between 1992 and 1994. Moreover, there is no evidence that the defendants were the ones who offered or sold the units to Viernow; rather, an independent broker offered and sold these units.

The summary judgment's rejection of these claims was proper.

## G. Motion to Amend

Viernow's remaining assignment of error challenges the district court's refusal to permit him to amend his complaint. As discussed more fully above, Viernow filed the present action in January of 1995 in Texas State Court, the case was removed to federal court in Texas in February 1995, and later transferred to the federal court in Utah in February 1996. Shortly after the transfer, defendants filed their motion for summary judgment in March 1996, and the district court heard arguments on August 12, 1996. At the conclusion of the hearing, the district judge orally granted the defendants' summary judgment motion.

Before the district court entered a formal judgment in favor of the defendants, Viernow filed his motion to amend his complaint on August 23, 1996. The record reveals that the district court never specifically addressed this motion, and the court entered its formal order and judgment in favor of the defendants on September 9, 1996, effectively dismissing the entire case along with the motion to amend.

The "decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion, Fed. R. Civ. P. 15(a), and will not be disturbed absent an abuse of that discretion." Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991)). Although a district court is normally required to give reasons for its refusal to grant leave to amend, failure to do so "can be harmless error where the reason is apparent," Id. (quoting

Long v. United States, 972 F.2d 1174, 1183 (10th Cir. 1992)), and we "have often found untimeliness alone a sufficient reason to deny leave to amend." Id.

In the present case, Viernow sought leave to amend some nineteen months after filing his original complaint, and such leave was only sought after the trial judge orally granted the defendants' summary judgment motion. Viernow argues that the transfer of his case to Utah and his unfamiliarity with Utah law, coupled with threats of sanctions from defendants and the expense of associating local counsel, had a "chilling" impact on him and caused him to delay filing his amended complaint. Viernow also contends that the timing of his motion to amend resulted from conservative case management rather than inexcusable delay.

It is clear to us that Viernow's amended complaint proposed new theories that he "did not choose to advance until after his primary [theories] had been dismissed." Id. Further, although Viernow now claims that he did not include federal claims under the Securities and Exchange Act in his original state court petition because such claims provide for exclusive federal jurisdiction, he had approximately eighteen months in which to include such claims after the case was removed to federal court. We find no justification for his failure to do so, and we do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings. Here, the case was essentially over once the trial judge orally stated at the motion hearing that he was granting summary judgment in favor of defendants -- all that was required in order to formally close the case was the entry of judgment. Hence, although the

district court did not give reasons for refusing to grant leave to amend, the "grounds for refusal are clear from the record," <u>Pallottino</u>, 31 F.3d at 1027. Indeed, in announcing his ruling on the summary judgment motion the judge said that the case was correctly termed "a moving target. It seems to change from time to time, including right up until oral argument today . . . ." Aplt. App. Tab 18 at 42. We find no abuse of discretion in refusing to permit amendment.

**AFFIRMED.**