UNITED STATES of America,
Plaintiff,

v.

Glen H. STINSON, also known as Glenn H. Stinson; Naomi A. Stinson; Michael Stinson; Brenda K. Bryan; Robert Bryan; Rebecca Gay McFarland; Donald Mack, Naomi A. Stinson and Jimmy D. Spiller as Trustees of the Stinson Family Preservation Trust of Kingfisher County, Oklahoma; Donald Mack, Naomi A. Stinson and Jimmy Spiller as Trustees of the H & H Stinson Family Preservation Trust of Kingfisher County, Oklahoma; Donald Mack, Naomi A. Stinson and Jimmy D. Spiller as Trustees of the G. & N. Family Preservation Trust of Kingfisher County, Oklahoma; and Brenda K. Bryan, on behalf of Mr Br Family Preservation Trust of Garfield County, Oklahoma; Defendants.

No. CIV–03–50–R.

United States District Court,
W.D. Oklahoma.

Aug. 5, 2005.

Laquita Taylor–Phillips, US Dept of Justice, Washington, DC, for Plaintiff.

Glen H. Stinson, Dover, OK, pro se.

Naomi A. Stinson, Dover, OK, pro se.

## ORDER

RUSSELL, District Judge.

Before the Court are the Government's Motion for Summary Judgment (Document No. 72), the Motion to Dismiss filed on behalf of Defendant Glenn Stinson (Document No. 67),[1] the Motion to Quash filed on behalf of Defendant Glenn Stinson (Document No. 81) and the Motion and Request for Clarification filed by Defendant Glenn Stinson (Document Nos. 61, 63).

---

1. Some of the pleadings and records in this case, including the deeds to certain parcels of real property which are the subject of this case have spelled Mr. Stinson's first name "Glen," and others have spelled it "Glenn." It appears, however, that in the documents and letters bearing his signature, Mr. Stinson has spelled his first name "Glenn;" thus, the Court will follow this spelling for purposes of the instant motions.

## I. *Defendants' Motions.*

In this proceeding, the Government seeks: 1) to reduce to judgment certain unpaid federal income tax assessments made against Defendant Glenn Stinson; 2) to set aside certain conveyances of real property as fraudulent against the United States; 3) a declaration that the Stinson Family Preservation Trust; the G & N Family Preservation Trust; and the MR BR Family Preservation Trust are the nominees and/or alter egos of Glenn Stinson; and 4) an order foreclosing federal tax liens on the subject real property.

Defendant Glenn Stinson argues that the case should be dismissed or "quashed" on the grounds that: 1) evidence of fraud and racketeering was deleted from the "master files" the IRS maintained on them; 2) all of the IRS files maintained on Glenn Stinson prior to the year 2000 have been deleted and replaced with files created after the year 2000; 3) He and Naomi Stinson have never been involved in any activities that brought them under the jurisdiction of the federal Bureau of Alcohol, Tobacco and Firearms; and 4) GLENN STINSON and NAOMI STINSON, as spelled in all capital letters in the caption of this case, are "tombstone names," and therefore, are "nonliving persons" who have never conducted any business in Oklahoma; 5) that the Department of Justice does not have jurisdiction in the absence of a "revenue taxable activity;" 6) that the IRS cannot produce an individual assessment for himself and his wife; 7) that the IRS inserted the phrase "involuntary bankruptcy pending" and then removed it; 8) that the IRS refused to stop a

levy against Naomi Stinson in 1992 after the levy was overpaid; 9) that all notices of liens were filed using Title 27, C.F. R.; 6) that Department of Justice attorneys and judges have a conflict of interest in this case because they are federal employees; 10) that it has been impossible for him to obtain legal counsel who is not subject to retaliation by the IRS; and 11) that he and Mrs. Stinson have received a court order to testify against themselves.

Mr. Stinson has submitted an affidavit, alleging that he had no income for the years 1981, 1982 and 1983, for which he and his wife received joint notices of deficiency. Mr. Stinson's affidavit describes his disagreement with the IRS about his tax liability and alleges that after receiving the deficiency notices and "threatening letters" from the IRS, he "broke into an IRS office to get an audit but never got one." The affidavit includes allegations of various difficulties Mr. and Mrs. Stinson have encountered with the attorneys who previously represented them in this proceeding. Mr. Stinson's affidavit further alleges that IRS officials provided him with differing versions of his file for the tax years 1980 through 1987.

Mr. Stinson argues in his reply brief that he is entitled to judgment because the Government has failed to refute his affidavit. Mr. Stinson's affidavit, filed February 28, 2003, alleges that he "holds a secured interest in the property described" in the Complaint; that he has no knowledge of the commission of fraud; and that he has never intended to defraud the United States through the conveyance of property or through other means.[2] Mr. Stinson's

---

**2.** Mr. and Mrs. Stinson submitted separate affidavits on February 28, 2003, each captioned "Affidavit Regarding Discharge of Indebtedness." These affidavits read as follows:

"1. In peace, with honor, without controversy. Affiant has submitted his timely response to Plaintiff as of this mailing.
2. That the Affiant holds a Secured interest in the property described within

affidavit does not refute the Government's evidence that the taxes were properly assessed against Defendant Glenn Stinson, and that the amounts listed in the official records produced by the Government are due and owing.

■ The Government correctly points out that to the extent that Mr. Stinson's motions seek dismissal for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. Pro. they are untimely. Mr. Stinson has already filed an answer to the Government's amended complaint. See Rule 12(b)(6), Fed. R. Civ. Pro. (A motion asserting a defense of failure to state a claim "shall be made before pleading. . . ."). *See also Thomas v. Travnicek*, 2003 WL 22466194 (D.Kan.2003). Thus, Defendant Glenn Stinson is not entitled to dismissal under Rule 12(b)(6), Fed. R. Civ. Pro.

■ Mr. Stinson's motions might be interpreted as seeking judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. Pro. Mr. Stinson would be entitled to judgment on the pleadings only if he clearly established that there are no material issues of fact, and that they are entitled to judgment as a matter of law. *Lambert v. Inryco, Inc.*, 569 F.Supp. 908, 912 (W.D.Okla.1980). The allegations in Mr. Stinson's motions and his affidavit do not clearly establish the absence of material issues of fact; nor do they establish that Mr. Stinson is entitled to judgment as a matter of law. *Id.* The Court finds, accordingly, that Defendant Glenn Stinson is not entitled to judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. Pro.

Defendant Glenn Stinson argues in his motion to dismiss and his motion to quash that the Court lacks jurisdiction. See Rule 12(b) (1), Fed. R. Civ. Pro. The Court has jurisdiction over the Government's claim to reduce Defendant Glenn Stinson's federal tax assessments to judgment, and to enforce the federal tax liens on the real property in which the Defendants have an interest pursuant to Title 26 U.S.C. Sections 7402 and 7403. See Title 28 U.S.C. §§ 1340 and 1345. Mr. Stinson is not entitled to have this suit dismissed or "quashed" on the basis of subject matter jurisdiction.

Defendant Glenn Stinson alleges in his motion to quash that the notices of deficiency sent to him and Defendant Naomi Stinson are based on "activities" in which neither of them were engaged. Mr. Stinson alleges, in conclusory fashion, that the notices of deficiency are "fraudulent" and "self-serving," and should be disregarded because he and Mrs. Stinson were never given notice by the Secretary of the Treasury of the requirement to keep books and

Plaintiffs notice. That the Affiant has no knowledge of the commission of fraud.

3. That the Affiant has never intended to defraud United States of America by conveyance or any other means.

4. That the Affiant was unaware of any provision in law prohibiting the protection under the law of contracts outlined in Article 10 Section 1 of the United States Constitution.

5. In lieu of further controversy, Accepts for Value the instant presentment made to the Affiant in the amount of 114867.72 USD.

6. In lieu of further controversy that the Affiant is tendering a second payment to Plaintiff in c/o UNITED STATES TREA-

SURY in the amount of 12,000.00 USD in effort to satisfy statutory interest amount unknown to Affiant.

NEGATIVE AVERMENT

1. The Affiant does not see a superior claim to that of Glen H. Stinson, Secured Party/Creditor.

2. The Affiant does not see a credible witness.

3. The Affiant does not see an account stated.

4. The Affiant does not see a debt owing.

5. The Affiant does not see a controversy.

6. The affiant does not see any cause to refuse summary judgment in affiant's favor."

records. Mr. Stinson also argues in his motion to quash that there is no federal law which makes him liable for federal income taxes. Such arguments have been uniformly found to be frivolous. *See, e. g., Lonsdale v. United States,* 919 F.2d 1440, 1447—1448 (10th Cir.1990); *United States v. Connor,* 898 F.2d 942, 943—944 (3rd Cir.), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 793 (1990); *Funk v. Commissioner of Internal Revenue,* 687 F.2d 264, 265 (8th Cir.1982). Mr. Stinson's motion to quash will be denied.

Defendant Glenn Stinson has submitted a letter to the Court seeking clarification of why his name, and the name of Naomi Stinson, were spelled in all capital letters in documents they received from the I.R.S. Mr. Stinson alleges in his letter that he has submitted Freedom of Information Act requests seeking the documents which require I.R.S. employees and computer programs to spell proper names with all capital letters. Defendant Glenn Stinson purports to be confused as to whether the Government's complaint in this proceeding is directed at "Glenn Stinson and Naomi Stinson" or against "GLENN STINSON and NAOMI STINSON." The difference between the fully capitalized and the first-letter capitalized versions of the Defendants' names is immaterial, and provides no defense to the claims asserted by the Government.

## II. *Government's Motion for Summary Judgment.*

The Government seeks summary judgment on its claims against Defendants Glenn Stinson, Naomi Stinson, Michael Stinson, Brenda K. Bryan, Robert Bryan, Rebecca Gay McFarland, Donald Mack and Jimmy D. Spiller.

### A. *Assessment of Taxes Against Defendant Glenn Stinson.*

■ The Court first addresses the Government's contention that their requests

for admission should be deemed admitted. The Government previously filed a motion to compel alleging that Defendants Glenn Stinson and Naomi Stinson had failed to provide sufficient responses to its request for admissions. On December 21, 2004, the Court entered an order granting the Government's motion to compel, and advising said Defendants that a failure to file an appropriate response within fifteen (15) days would result in the Government's requests being deemed admitted. On January 7, 2005 Defendant Glenn H. Stinson filed a document in response to the Court's order which does not appropriately respond to the Government's request for admissions, does not comply with the Court's order, and is wholly inadequate. (Document No. 68). Defendant Naomi Stinson did not file a separate response. Accordingly, Defendants Glenn H. Stinson and Naomi Stinson will be deemed to have admitted, for purposes of this proceeding, the matters set forth in the Government's request for admissions. Rule 36, Fed. R. Civ. Pro.

The Internal Revenue Service ("I. R. S.") has assessed federal income taxes, interest and penalties against Defendant Glenn Stinson for the years 1985 through 1997. According to the Government's evidence, Mr. Stinson owes income taxes, interest and penalties in the following amounts for the following years, as of May 9, 2005:

| Tax Year | Principal Balance | Accrued Interest | Accrued Penalties | Balance of Liability |
|---|---|---|---|---|
| 1985 | $10,827.29 | $27,180.66 | $1,912.94 | $39,920.89 |
| 1986 | 12,333.17 | 19,314.45 | 1,170.50 | 32,818.12 |
| 1987 | 16,251.57 | 25,450.87 | 1,724.50 | 43,426.94 |
| 1988 | 808.96 | 1,266.92 | 110.00 | 2,185.88 |
| 1989 | 6,093.57 | 5,383.86 | 687.61 | 12,165.04 |
| 1990 | 3,876.32 | 5,010.50 | 581.74 | 9,468.56 |
| 1991 | 1,456.06 | 1,873.98 | 242.50 | 3,572.54 |
| 1992 | 22,811.42 | 28,283.64 | 4,045.74 | 55,140.80 |
| 1993 | 26,545.62 | 12,981.38 | 3,395.24 | 42,922.24 |
| 1994 | 1,463.29 | 715.60 | 202.00 | 2,380.89 |
| 1995 | 3,520.34 | 1,721.51 | 530.50 | 5,772.35 |
| 1996 | 2,886.43 | 1,411.54 | 473.74 | 4,771.71 |
| 1997 | 6,107.11 | 2,052.04 | 1,019.24 | 9,178.39 |

(Government's Supplemental Exhibits 30 through 42).

On May 7, 1999, Defendant Glenn Stinson requested a collection due process hearing. Mr. Stinson's request for a hearing suspended the statute of limitations, so that the limitation period for bringing an action to collect the earliest assessments, which were made on August 10, 1992, did not expire until July 25, 2003; well after this proceeding was commenced on January 9, 2003. See Title 26 U.S.C. § 6330(e).[3]

 Federal tax assessments are presumptively valid. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Ruidoso Racing Association Inc. v. Commissioner of Internal Revenue*, 476 F.2d 502, 507 (10th Cir.1973). By presenting the Certificates of Assessments and Payments, the Government has made a prima facie case of tax liability against Defendant Glenn Stinson. *United States v. Rindskopf*, 105 U.S. 418, 422, 15 Otto 418, 26 L.Ed. 1131 (1881); *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984); *Long v. United States*, 972 F.2d 1174 (10th Cir.1992). The burden thus shifts to Mr. Stinson, as the taxpayer, to refute the validity of the assessments. *Id.*

 Defendant Glenn Stinson first argues that the Government's motion for summary judgment should be denied because the Court's order directing him to respond to the Government's request for admissions did not bear a court seal, and was not court certified. The Court's order entered December 21, 2004, directing Mr. and Mrs. Stinson to file appropriate responses to the Government's requests for admissions, was signed by the undersigned United States District Judge. Certified copies of such orders are not routinely provided, but are available from the office of the Court Clerk. The fact that the signed, file-stamped photocopy received by Mr. and Mrs. Stinson did not bear the court seal has no effect on the validity of that order.

 Mr. Stinson next argues that by deeming certain facts to be admitted, the Court is "attempting to force testimony in an excise tax case that could be criminal or turn criminal for an attorney that cannot prove anything." The Court liberally construes this argument as an assertion of Mr. Stinson's Fifth Amendment privilege against self-incrimination. The Government's requests for admissions in this case sought admissions from Mr. and Mrs. Stinson concerning the assessment of federal income taxes against Mr. Stinson, the amount of taxes owed by Mr. Stinson, and the conveyance of various parcels of real estate involved in this litigation. Ordinarily, requiring taxpayers to provide information about their income and the taxes they owe does not implicate the Fifth Amendment privilege against self-incrimination, and Mr. and Mrs. Stinson have not demonstrated a reasonable basis for the exercise of the Fifth Amendment privilege in this case. *Burns v. Commissioner of Internal Revenue*, 76 T.C. 706, 1981 WL 11243 (Tax Ct.1981). *See also Brashier v. Commissioner of Internal Revenue*, 12 Fed.Appx. 698 (10th Cir.2001) (Requiring taxpayers to file sworn income tax returns does not

---

**3.** Title 26 U.S.C. § 6330(e) provides, in part:

 **(e) Suspension of collections and statute of limitations.**

 (1) In general.—Except as provided in paragraph (2), if a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 ... shall be suspended for the period during which such hearing, and appeals therein, are pending. In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing....

violate their Fifth Amendment right against self-incrimination); *United States v. Sullivan,* 274 U.S. 259, 263—264, 47 S.Ct. 607, 71 L.Ed. 1037 (1927) (Taxpayer could not avoid filing a sworn income tax return by claiming privilege under the Fifth Amendment).

Mr. Stinson next argues that the Government's motion for summary should be denied because the I.R.S. removed "individual master files" pertaining to Mr. Stinson before commencing this case. Mr. Stinson alleges that the I.R.S. "changed the dates and amounts [on his master files] before they replaced them." Mr. Stinson alleges that the I.R.S. revised his documents to insert the phrase "involuntary bankruptcy pending," then deleted this phrase from his file. Mr. Stinson further alleges that the "Substitute for Return" documents prepared by I.R.S. employees are "malicious" and "self-serving," and were covertly prepared. Mr. Stinson has failed to offer any evidence in support of these allegations, and, in any event, these allegations would not raise a genuine factual dispute as to the validity of the tax assessments against Mr. Stinson.

Mr. Stinson also argues that the Government's summary judgment motion should be denied because he and Mrs. Stinson have never had any licenses or contracts which would bring them within the jurisdiction of the Bureau of Alcohol, Tobacco and Firearms. The tax assessments which the Government seeks to reduce to judgment were federal income taxes, not excise taxes on alcohol, tobacco or firearms. (Government's Exhibits 1 through 13; 30 through 42).

Mr. Stinson raises numerous other arguments in opposition to the Government's summary judgment motion, including the

argument that Title 26 of the United States Code was "repealed" in 1939, that Title 26 is a "Trojan Horse with Title 27 hidden inside," that the Government's attorneys and judges have a conflict of interest because they are federal employees and pay income taxes, and that it has been impossible for him to obtain legal counsel who is not subject to retaliation by the I.R.S. Mr. Stinson cites no controlling or persuasive legal authority in support of these arguments, and the Court finds them insufficient to overcome the presumptive validity of the tax assessments. *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Wallis v. Commissioner of Internal Revenue,* 357 F.2d 313, 314 (10th Cir.1966).

In summary, the Government has shown, through the Certificates of Assessments and Payments offered into evidence, that federal income taxes, together with penalties and interest, were assessed against Defendant Glenn Stinson, and that those assessments remain due and owing in the amounts stated above. Mr. Stinson has not offered evidence sufficient to raise a genuine factual dispute as to the validity of the assessments, or the amount of taxes owed. Moreover, Mr. Stinson is deemed to have admitted that an agent of the I.R.S. gave him timely notice of each assessment, and made demand for payment of the amounts assessed, and that he has failed or refused to pay the assessed tax liabilities. (Government's Request for Admissions, Request No. 1; Government's Exhibits 1 through 13, 30 through 42). Accordingly, the Court finds that there is now due and owing to the United States the amount of $263,724.35, plus statutory interest from May 9, 2005.[4] Defendant Glenn Stinson is deemed to have admitted

4. The Government alleged in its original brief that Mr. Stinson owed $249,908.08, plus statutory interest from March 1, 2004. In its

supplemental brief, the Government has offered certified records showing that Mr. Stinson owes $263,724.35 as of May 9, 2005.

that the taxes, penalties and interest remain due and owing. The Court finds, therefore, that the Government is entitled to have the tax assessments reduced to judgment.

### B. *Real Estate.*

The Government seeks an order foreclosing its liens against the following five parcels of real estate, arguing that Defendant Glenn Stinson is the owner or beneficial owner:

*Parcel 1:* The Government alleges that on December 30, 1961, Horace and Hazel Stinson conveyed Parcel 1, located in Kingfisher County, Oklahoma, to Defendants Glenn Stinson and Naomi Stinson as joint tenants. (Government's Exhibit No. 14). On February 10, 1987, Naomi Stinson quitclaimed her interest in Parcel 1 to Glenn Stinson, and on that same day, Glenn Stinson conveyed Parcel 1 to the Stinson Family Preservation Trust. (Government's Exhibit Nos. 15 and 16). Parcel 1 is more particularly described as follows:

> Beginning at a point 1185 feet East of the Northwest corner of the Northeast Quarter of Section Twenty–Eight (28), Township Eighteen North (T–18–N) Range Seven (R–7) W.I.M. thence South 417.4 feet, thence East 208.7 feet, thence North 417.4 feet, thence West 208.7 feet to the place of beginning, containing two acres more or less. Including minerals thereof.

*Parcel 2:* The Government alleges that on January 10, 1966, Horace and Hazel Stinson transferred Parcel 2 to Defendants Glenn Stinson and Naomi Stinson as joint tenants, reserving life estates. (Government's Exhibit No. 17). On May 2, 1973, Horace and Hazel Stinson conveyed their remaining life estate interests in

Parcel 2 to Glenn Stinson and Naomi Stinson by quitclaim deed. (Government's Exhibit No. 18). The following day, Glenn Stinson and Naomi Stinson transferred all of the oil, gas and other minerals produced from Parcel 2 to Horace and Hazel Stinson. (Government's Exhibit No. 19). After Horace Stinson's death, Glenn Stinson and Naomi Stinson inherited his mineral rights in Parcel 2 as joint tenants. On April 18, 1978, Hazel Stinson conveyed her remaining interest in Parcel 2 to Glenn and Naomi Stinson as joint tenants. (Government's Exhibit Nos. 20 and 21). On February 10, 1987, Naomi Stinson quitclaimed her interest in Parcel 2 to Glenn Stinson. On that same day, Glenn Stinson conveyed Parcel 2 to the G & N Stinson Family Preservation Trust. (Government's Exhibit Nos. 22 and 23). Parcel 2, located in Kingfisher County, Oklahoma, is more particularly described as follows:

> The Northeast Quarter (NE 1/4) of Section Twenty-eight (28) Township Eighteen North (T–18–N) range Seven (R–7) W.I.M. including minerals (80 acre minerals) said tract containing One Hundred Fifty Eight acres more or less.

*Parcel 3:* The Government alleges that on June 23, 1982, Glenn and Naomi Stinson jointly inherited Parcel 3 from Horace Stinson. (Government's Exhibit No. 20). On February 10, 1987, Naomi Stinson quitclaimed her interest in Parcel 3 to Glen Stinson, and Glenn Stinson conveyed Parcel 3 to the H & H Stinson Family Preservation Trust. (Government's Exhibit Nos. 24 and 25). Parcel 3, located in Kingfisher County, Oklahoma, is more particularly described as follows:

> All of the Southeast Quarter (SE 1/4) of Section 21, Township 18 North, Range 7 W.I. M., including the minerals thereof, Kingfisher County, Oklahoma.

*Parcel 4:* The Government alleges that on October 25, 1983, Burrell Cupps conveyed to Glenn Stinson an undivided ten-acre interest in Parcel 4, which Defendant Glenn Stinson still owns. (Government's Exhibit No. 26). Parcel 4 is more particularly described as follows:

An undivided ten (10) acre interest in and to the Northeast Quarter (NE 1/4) of Section Thirty-six (36), Township Twenty (20) North, Range Seven (7) W.I. M., Garfield County, Oklahoma. Except all the oil, gas and other minerals lying in, on or under said property.

*Parcel 5:* On June 4, 1985, Naomi Stinson inherited Parcel 5 from Burrell Cupps. On February 10, 1987, Naomi Stinson quitclaimed her interest in that parcel to Glenn Stinson. That same day, Glenn Stinson conveyed Parcel 5 to the MR BR Family Preservation Trust. (Government's Exhibit Nos. 27, 28 and 29). Parcel 5 is more particularly described as follows:

An undivided Eighty-two (82) acres more or less, interest in and to the Northeast Quarter (NE 1/4) of Section Thirty-six (36), Township Twenty (20) North, Range Seven (7) W.I.M. in Garfield County, Oklahoma, including an undivided one-half interest in all of the oil, gas and other minerals lying in, or under said property to wit: Eighty (80) acres more or less.

The Government contends that Naomi Stinson's transfers of her interests in Parcels 1, 2, 3 and 5 to Glenn Stinson constitute gifts to Glenn Stinson. The Government further contends that the Stinson Family Preservation Trust holds Parcel 1 as the nominee and/or alter ego of Glenn Stinson; that the G & N Stinson Family Preservation Trust holds Parcel 2 as the nominee and/or alter ego of Glenn Stinson;

that the H & H Stinson Family Preservation rust holds Parcel 3 as the nominee and/or alter ego of Glenn Stinson; and that the MR BR Family Preservation Trust holds Parcel 5 as the nominee and/or alter ego of Glenn Stinson. The Government contends that Glenn Stinson is the true, beneficial owner of each of these properties, as well as Parcel 4, which is still held in his name.

The Government contends that Defendant Naomi Stinson is named in the trust instruments as a trustee of the Stinson Family Preservation Trust, the G & N Stinson Family Preservation Trust, and the H & H Stinson Family Preservation Trust. The Government contends that Defendant Brenda K. Bryan, is the daughter of Defendant Glenn Stinson, and is named in the trust instruments as the agent of the MR BR Family Preservation Trust. Defendant Robert Bryan is the husband of Brenda K. Bryan. Defendant Michael Stinson is the son of Defendant Glenn Stinson. The Government contends that Naomi Stinson, Brenda K. Bryan, Robert Bryan and Michael Stinson were named as Defendants in this action because they may claim some interest in the real estate on which the Government seeks to foreclose its tax liens. Likewise, the Government contends that Defendant Rebecca Gay McFarland is named as a Defendant in this action because she may claim an interest in the parcels on which the Government seeks to foreclose its lien. Defendants Brenda K. Bryan, Robert Bryan, Michael Stinson and Rebecca Gay McFarland have each filed a document stating that they have "no information responsive" to the Government's complaint.

The Government contends that Defendants Donald Mack and Jimmy D. Spiller are also named as trustees of the Stinson

Family Preservation Trust, the G & N Stinson Family Preservation Trust, and the H & H Stinson Family Preservation Trust.[5] The Government recites in its motion that Mr. Mack and Mr. Spiller were named as Defendants in this proceeding because each of them might claim some interest in the real estate on which the Government seeks to foreclose its liens. Mr. Mack has failed to respond to the Government's complaint, although he has been properly served, and Mr. Spiller has filed a document stating that he had resigned as trustee of the aforementioned trusts, and that he has no interest in any of the subject real estate. (Document No. 8).

Section 6321 of the Internal Revenue Code, Title 26 U.S.C. § 6321 imposes a lien upon all "property and rights to property" belonging to a taxpayer who has failed to pay taxes properly assessed against him.[6] This statutory lien arises upon assessment of the tax, and continues until the taxpayer's liability is satisfied or becomes unenforceable. Title 26 U.S.C. § 6322;[7] *United States v. National Bank of Commerce*, 472 U.S. 713, 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

 The lien created by Section 6321 attaches to a taxpayer's property held in the name of a nominee or alter ego of the taxpayer. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (Assessments against an individual taxpayer were a lien in favor of the United States upon all property belonging to him, and if the corporation of which he was the general manager was his alter ego, it had no countervailing effect for purposes of his federal income tax); *Shades Ridge Holding Company v. United States*, 888 F.2d 725, 728 (11th Cir.1989) (Property of nominee or alter ego of taxpayer is subject to collection of taxpayer's tax liability; issue under either state or federal law depends upon who has "active" or "substantial" control), *cert. denied sub nom.*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 609 (1990). Federal case law recognizes that where a taxpayer attempts to defeat the collection of his federal tax debts by placing his property in the names of third parties who act as nominees, straw parties or alter egos of the taxpayer, the conveyances to the third parties will be disregarded as fraudulent conveyances, and the outstanding tax liens will be foreclosed on the property. *United States v. Drexler*, 1985 WL 9487 (E.D.Okla.1985); *Valley Finance, Inc. v. United States*, 629 F.2d 162 (D.C.Cir.1980), *cert. denied, sub nom., Pacific Develop-*

---

5. Defendants Glenn Stinson and Naomi Stinson deny that Mr. Mack and Mr. Spiller are trustees of these trusts. (Amended Answer, pars. 9 and 10). Mr. Spiller has filed a notice in the case representing to the Court that he has resigned as trustee of the various trusts. (Document No. 8). Mr. Mack has failed to respond to the Complaint.

6. Title 26 U.S.C. § 6321 provides:
 "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in

favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

7. Title 26 U.S.C. § 6322 provides:
 "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

*ment, Inc. v. United States,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Avco Delta Corp. Canada, Ltd. v. United States,* 540 F.2d 258 (7th Cir.1976), *cert. denied sub nom., Canadian Parkhill Pipe Stringing, Ltd. v. United States,* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). Thus, under Sections 6321 and 6322, federal tax liens attach to all property and rights to property belonging to Defendant Glenn Stinson, including those properties which are held by his nominees and/or alter egos, as well as the parcel which is held in his name.

■■■ Generally, federal courts look to state law to determine whether an entity is a nominee or alter ego of a taxpayer. *Aquilino v. United States,* 363 U.S. 509, 512—513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Under Oklahoma law, the indicia of a fraudulent conveyance include inadequate consideration, insolvency of the transferor, a familial relationship between the transferor and transferee, the pendency or threat of litigation, and the transfer of the debtor's entire estate. *See Ebey–McCauley Co. v. Smith,* 353 P.2d 23, 28 (Okla.1960); *United States v. Drexler,* 1985 WL 9487 (E.D.Okla.1985); *United States v. Boomershine,* 968 F.2d 1224, 1992 WL 164280 (10th Cir.1992). *See also Stoner v. Farber,* 263 P.2d 159, 161 (Okla.1954) (A conveyance between family members, or members of the same household, at a time when the original owner is insolvent and being sued by a creditor has the indicia of a fraudulent conveyance, and is to be closely scrutinized by the court).

■■■ Here Defendant Glenn Stinson has failed to offer evidence sufficient to raise a genuine factual dispute as to his conveyances of Parcels 1, 2, 3 and 5. Further, Mr. Stinson is deemed to have admit-ted that Naomi Stinson's transfer of her interest in Parcels 1, 2, 3 and 5 were gifts to him. In addition, Mr. Stinson is deemed to have admitted that his conveyances of Parcels 1, 2, 3 and 5 to the various trusts were made without fair and adequate consideration and rendered him insolvent, that he retained possession or control of these parcels and that he continues to reside on Parcel 1. Mr. Stinson is further deemed to have admitted that he is the true, beneficial owner of Parcels 1 through 5, and that he continues to reside on Parcel 1. In addition, Defendant Glenn Stinson is deemed to have admitted that he transferred Parcels 1, 2, 3 and 5 with the intent to hinder, delay or defraud creditors, including the United States, and that his transfers impaired the rights of the United States to collect its lawful debts.

The Court finds, therefore, that the Stinson Family Preservation Trust is the alter ego or nominee of Defendant Glenn Stinson, and that Glenn Stinson is the true, beneficial owner of Parcel No. 1; that the G. & N. Stinson Family Preservation Trust is the alter ego or nominee of Defendant Glenn Stinson, and that Glenn Stinson is the true, beneficial owner of Parcel No. 2; that the H & H Stinson Family Preservation Trust is the alter ego or nominee of Defendant Glenn Stinson, and that Glenn Stinson is the true, beneficial owner of Parcel No. 3; that the MR BR Family Preservation Trust is the alter ego or nominee of Defendant Glenn Stinson, and that Glenn Stinson is the true, beneficial owner of Parcel No. 5. The Court further finds that Defendant Glenn Stinson is the lawful owner of Parcel No. 4. For the same reasons, neither the Stinson Family Preservation Trust, the G. & N. Stinson Family Preservation Trust, the H & H Stinson Family Preservation Trust, the MR BR Family Preservation Trust and their re-

spective trustees hold no ownership interest in the subject real estate. Accordingly, the Court finds as a matter of law that Title 26 U.S.C. § 7403 does not permit the trust Defendants or the respective trustees to share in any proceeds of the future sale of the subject real estate.

Defendants Michael Stinson, Brenda K. Bryan, Robert Bryan and Rebecca Gay McFarland have filed statements reciting that they have "no information responsive" to the Complaint. These Defendants have not asserted any legal interest in the subject real estate. Accordingly, the Court finds as a matter of law that Title 26 U.S.C. § 7403 does not permit said Defendants to share in any proceeds of the future sale of the subject real estate.

### III. Conclusion.

Defendant Glenn Stinson has failed to offer evidence sufficient to raise a genuine factual dispute as to the validity of the Government's federal income tax assessments against him. The Court finds, therefore, that the Government is entitled to judgment against Defendant Glenn Stinson in the amount of $263,724.35. Likewise, the Defendants have failed to offer evidence sufficient to raise a genuine factual dispute as to the Government's contention that Defendant Glenn Stinson is the true, beneficial owner of the five parcels of real estate described above, and that none of the other named Defendants owns a valid, legal interest in said property. Accordingly, the Government's motion for summary judgment (Document No. 72) is hereby GRANTED. The motion to dismiss filed on behalf of Defendant Glenn Stinson (Document No. 67) is hereby DENIED. The motion to quash filed on behalf of Defendant Glenn Stinson (Document No. 81) is likewise DENIED. Defendant Glenn Stinson's motion and re-

quest for clarification are hereby DENIED insofar as they challenge the Complaint on the basis of the capitalization of the names of Defendants Glenn Stinson and Naomi Stinson. The Government is directed to submit a proposed judgment and order of foreclosure.

### JUDGMENT

In accordance with the Court's Order entered on July 22, 2005, judgment is hereby entered in favor of the United States and against Glen H. Stinson (also known as Glenn H. Stinson) for the unpaid balance of federal income taxes, penalties, and interest in the amount of $263,724.35, as shown below, plus interest and statutory additions according to law from May 9, 2005 until paid.

| Tax Year | Balance of Liability due as of May 9, 2005 |
|---|---|
| 1985 | $ 39,920.89 |
| 1986 | 32,818.12 |
| 1987 | 43,426.94 |
| 1988 | 2,185.88 |
| 1989 | 12,165.04 |
| 1990 | 9,468.56 |
| 1991 | 3,572.54 |
| 1992 | 55,140.80 |
| 1993 | 42,922.24 |
| 1994 | 2,380.89 |
| 1995 | 5,772.35 |
| 1996 | 4,771.71 |
| 1997 | 9,178.39 |
| TOTAL | $ 263,724.35 |